The HOKE COMPANY, INC., and Alley-Cassetty Coal Company, Plaintiffs,

v.

TENNESSEE VALLEY AUTHORITY, et al., Defendants.

Civ. A. No. C83–0186 P(J).

United States District Court,
W.D. Kentucky,
Paducah Division.

Feb. 19, 1987.

---

**3.** This conclusion is consistent with past OHA precedent. See, e.g., *Size Appeal of Robert* *McMullan & Son, Inc.*, No. 2153 (1985), at 6–7.

Harold T. Hurt, Richard W. Jones, Hurt, Haverstock & Jones, Murray, Ky., for plaintiffs.

Edward S. Christenbury, Gen. Counsel, TVA, Knoxville, Tenn., James E. Fox, Depu-

ty Gen. Counsel, Robert C. Glinski, Melvin L. Harper, for defendant TVA.

## MEMORANDUM

JOHNSTONE, Chief Judge.

This matter is before the Court on Defendant Tennessee Valley Authority's Motion to Dismiss or in the Alternative or Summary Judgment. This is an action for breach of an implied contract, or in promissory estoppel; for violation of 16 U.S.C. § 831h; violation of § 9(b) of the TVA Act; violation of TVA procurement regulations; for breach of public policy; and violation of the equal protection clause of the fifth amendment and the first amendment to the constitution. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1332.

## FACTS

This action arises from unsuccessful contract negotiations between TVA and Hoke for the purchase of coal by TVA. In October of 1981, TVA solicited offers for contracts to supply coal to the Paradise Steam Generation Plant near Drakesboro, Kentucky. In accordance with TVA's procurement policies, offers were solicited by issuance of a document titled "Requisition 62." Requisition 62 was a solicitation for a negotiated procurement rather than a competitive bid procurement. In this type of solicitation, contracts for coal are awarded on the basis of a bid arrived at *after* negotiations between the offerors and TVA and not as a result of a competitive bidding process. Final award of the contract was subject to approval by the TVA Board.

Among the bidders on Requisition 62 was The Hoke Company (hereinafter Hoke), a nonunion coal producer. Hoke prepared and submitted an offer of coal at $1.3022 per million BTU to TVA. This proposal apparently preliminarily satisfied the requirements and specifications set forth by TVA in Requisition 62, and thereafter, TVA entered into negotiations with Hoke. During these negotiations, Hoke claims that it raised the question of whether its nonunion status would affect TVA's consideration of Hoke's offer. Hoke claims that it informed TVA officials at that time that it did not wish to continue in the negotiations if TVA was only going to award the contract to a union producer. At each negotiation meeting, Hoke claims that it was assured by TVA officials that the contract award would not be affected by the labor affiliation or non-affiliation of the producers.

In June of 1984, the TVA staff recommended acceptance of Hoke's bid and two other low bids to the TVA Board of Directors. On June 29, 1984, the TVA Board of Directors held a closed "agenda meeting." At this meeting, TVA Board members considered the agenda for its upcoming public meeting scheduled July 17, 1982. The agenda for that meeting included the recommendation to accept Hoke's offer. After some deliberation, the Board decided to remove the recommendation from the agenda and directed the TVA staff to reconsider the amount of coal solicited in light of TVA's coal requirements.

The TVA staff sent a revised recommendation to the Board on July 8, 1982, recommending acceptance of only AMCA Resources, Inc.'s (AMCA's) offer under Requisition 62. AMCA, a union producer, was the lowest bidder under Requisition 62, offering to sell coal to TVA at a price of $1.1962 per million BTU. The Board approved the award of the contract to AMCA at its July 20, 1982 meeting. TVA informed Hoke of its decision by letter dated September 14, 1982.

Hoke claims that TVA rejected Hoke's bid because it is a non-union coal producer and TVA had a history of violence and other difficulties with deliveries of non-union coal at its Paradise generator. TVA claims on the other hand that TVA rejected Hoke's offer because the Board reassessed its future coal needs and revised its needs downward because of a decline in consumer demand.

## COMMON LAW CLAIMS

In its original Complaint, Hoke asked for specific performance of an implied contract with TVA to sell and deliver coal to the

Paradise Steam Plant.[1] Hoke claimed that this contract was formed during Hoke's negotiations with TVA and that TVA's refusal to accept Hoke's offer on allegedly improper grounds was a breach of that contract. Hoke revised this argument in its Brief in Opposition to Defendant Tennessee Valley Authority's Motion to Dismiss to instead assert that Hoke and TVA's negotiations had resulted in the formation of a "preliminary contract" between Hoke and TVA.[2]

Under its "preliminary contract" theory, Hoke claims that TVA's assurances that Hoke's nonunion status would not affect TVA's contract award constituted a promise on the part of TVA to consider factors *other* than union status in TVA's decision process. In return for this promise, TVA allegedly sought to have Hoke continue negotiating with TVA. Continuation in the negotiations entailed substantial work and expense on Hoke's part refining its offer and purchasing coal reserves. Hoke claims that it continued negotiations, but that TVA considered Hoke's nonunion status in reaching its decision, thereby breaching the alleged "preliminary contract."

Alternatively, Hoke claims that TVA's assurances constituted a promise or promises, and that Hoke justifiably relied upon these promises to its detriment. Hoke now claims damages in quasi-contract under a theory of promissory estoppel. Hoke also claims that TVA's actions in the face of its assurances constituted a violation of public policy, for which Hoke should also be recompensed.

### "Preliminary Contract"

■ Hoke's contract claims[3] center around the authority of the TVA officials with whom Hoke negotiated. The controlling question therefore is whether these TVA officials had the power to enter into the alleged "preliminary contract" which Hoke sues upon here.

It is axiomatic that an agent may contractually bind his principal only if the principal has actually, impliedly or apparently delegated that agent the authority to do so. In the present case, it is undisputed[4] that any offer for a contract under Requisition 62 had to be given final approval by the TVA Board of Directors.[5] Hoke has not directed the Court to any actual delegation of authority to bind the TVA Board as to the exercise of its discretion in accepting bids under Requisition 62. Nor has Hoke alleged any action by TVA or the TVA officials with whom Hoke dealt which would support a claim of implied or apparent authority in light of the known limitations of TVA officials' authority. Indeed, Hoke has not specified which TVA officials made the "promises" which formed the basis of the alleged "preliminary contract."

Nothing in this case's voluminous record indicates that the TVA officials negotiating with Hoke had the authority to bind the TVA Board in the exercise of the power

---

1. *See* Plaintiff's Complaint, paragraph 1 at 13.

2. *See* Hoke's Brief in Opposition to Defendant Tennessee Valley Authority's Motion to Dismiss or in the Alternative, for Summary Judgment, pp. 8–9 [hereinafter referred to as Brief in Opposition].

3. This Court must judge Hoke's actual and quasi-contract claims against TVA as a matter of federal law and not the law of any state. *See Cincinnati Elecs. Corp. v. Kleppe,* 509 F.2d 1080, 1086 (6th Cir.1975); *Tennessee Valley Authority v. Imperial Professional Coatings,* 599 F.Supp 436 (E.D.Tenn.1984); *Tennessee Valley Authority v. Mason Coal, Inc.,* 384 F.Supp. 1107, 1115 (E.D.Tenn.1974), *aff'd,* 513 F.2d 632 (6th Cir. 1975); *Tennessee Valley Authority v. U.S. Carbon Prods. Inc.,* 427 F.Supp. 474, 477 (E.D.Ill. 1976).

4. *See* Paragraph 8, Plaintiff's Complaint: "Contract terms were agreed upon by both Hoke and TVA, subject to contract approval by the TVA board."

5. Requisition 62 itself stated in broad terms that "TVA reserves the right to reject any or all offers." *See* Requisition 62, Exhibit A to Plaintiff's Complaint at 6. *See also* TVA regulation on Procurement of Personal Property and of Services, Exhibit B to Plaintiff's Complaint, at pages 5–6: "The Board of Directors approves any purchase or purchase award revision of more than $2,000,000." Hoke's bid was for the sale of coal over $2,000,000 and presumably only the Board could contractually bind TVA by accepting a bid of such magnitude. No delegation of the authority to accept Hoke's bid or waiver of the right to reject is evidenced in the regulation quoted above, nor in Requisition 62.

vested exclusively in the Board to accept or reject contract offers of the magnitude of Hoke's offer. Hoke's pleadings and supporting documents in this case are inadequate in that they offer no more than the general conclusory allegation that TVA's representatives were "authorized." While such allegations may have been sufficient to state a claim in Hoke's initial Complaint, something more was required when faced with a Motion for Summary Judgment. Fed.R.Civ.P. 56(e). *See Felix v. Young*, 536 F.2d 1126, 1134–35 (6th Cir.1976).

TVA raised the issue of the extent of the TVA officials' authority in its Brief in support of its Motion to Dismiss or in the Alternative for Summary Judgment. In response, Hoke has offered no Affidavits or other proof that the officials with whom it dealt had the authority to enter into the alleged "preliminary contract." This Court is aware that Hoke is under the discovery restrictions of the Court's Protective Order entered August 21, 1984. However, that Order did not preclude Hoke from discovering any actions by the Board which would have actually or impliedly delegated authority to TVA's negotiating officials. Neither Hoke's representatives nor the officials who negotiated on TVA's behalf were protected by the Court's Order. Presumably these persons have knowledge of facts establishing an actual, apparent or implied delegation of authority. Hoke has not directed this Court to any affidavits or testimony of these persons reflecting any special authority on the part of TVA's officials.

To this date, Hoke has not supported its allegations of authority on the part of TVA's agents in the face of TVA's evidence to the contrary. Thus there is no genuinely disputed issue of fact on this matter. The Court must conclude that any representations made by TVA officials during the course of their negotiations with Hoke as to how the Board would decide to accept or reject Hoke's offer were beyond the authority of those agents.

■ As a matter of law, TVA, a wholly government owned corporation, acting as an agency of the federal government, cannot be contractually bound by representations of an employee made without actual authority. *See, e.g., Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383–85, 68 S.Ct. 1, 2–4, 92 L.Ed. 10 (1947); *McCauley v. Thygerson*, 732 F.2d 978, 981 (D.C.Cir. 1984); *Empire-Detroit Steel Div. v. Occupational Safety & Health Review Comm'n*, 579 F.2d 378, 382–3 (6th Cir. 1978).

There is no genuine issue of material fact in dispute as to Hoke's "preliminary contract" claim, and judgment is appropriate as a matter of law. This Court shall therefore grant TVA's Motion for Summary Judgment on this claim.

### Promissory Estoppel

Hoke claims that the representations of TVA officials concerning Hoke's nonunion status constituted a promise upon which Hoke relied to its detriment such that Hoke should now be allowed recovery under the theory of promissory estoppel.

■ As a general proposition of federal law, there is no cause of action in promissory estoppel against the federal government. *See, e.g., Jablon v. United States*, 657 F.2d 1064, 1068 (9th Cir.1981). *Accord McCauley v. Thygerson*, 732 F.2d 978, 980–81 (D.C.Cir.1984) (promissory estoppel has a limited scope against the federal government). While Hoke recognizes that TVA is an "instrumentality of the United States," [6] it asserts that TVA was acting in this instance in a proprietary fashion and not in its governmental capacity,[7] and that consequently promissory estoppel is available against TVA.

■ There is much merit to this argument. The federal government has waived immunity from suit on various causes of action within the TVA statute, 16 U.S.C. § 831c(b). *See Queen v. Tennessee Valley Authority*, 689 F.2d 80, 85 (6th Cir.1982), *cert. denied*, 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983) (the language of the

---

**6.** *See* Complaint, paragraph 4 at 2.

**7.** *See id.*, paragraph 7 at 2.

TVA Act, 16 U.S.C. § 831c(b), indicates a broad waiver of sovereign immunity). This Court in the past has held actions somewhat similar to the actions in this case to be grounds for *tort* liability under the waiver of 16 U.S.C. § 831c(b). *See L. E. Brewer v. Sheco Construction Co.*, 327 F.Supp. 1017, 1019 (W.D.Ky.1971). The Court found no cases directly on point dealing with the *contractual* liability of TVA arising from actions such as those which form the basis of this suit. *Cf. Santoni v. Federal Deposit Insurance Corporation*, 677 F.2d 174, 179 (1st Cir.1982) (Promissory estoppel available against the FDIC when it was acting in its corporate capacity).

Many courts have simply held that TVA, as a wholly government owned corporation, is acting in a wholly governmental capacity. *See, e.g., Tennessee Valley Authority v. Kinzer*, 142 F.2d 833, 837 (6th Cir.1944); *PRI Pipe Supports v. Tennessee Valley Authority*, 494 F.Supp. 974, 977 (N.D.Miss. 1980); *Jackson v. Tennessee Valley Authority*, 462 F.Supp. 45, 50 (M.D.Tenn. 1978), *aff'd*, 595 F.2d 1120 (6th Cir.1979); *Tennessee Valley Authority v. U.S. Carbon Products*, 427 F.Supp. 474, 477 (E.D. Ill.1976); *Knickerbocker v. Tennessee Valley Authority*, 348 F.Supp. 230, 233 (E.D. Ill.1972); *U.S. ex rel. and for Use of TVA, infra. See also* 16 U.S.C. § 831r (TVA is "an instrumentality and agency of the Government of the United States for the purpose of executing its constitutional powers."). Such pronouncements are not particularly helpful to the resolution of this case.

On point on the issue of TVA's immunity from suit is *Queen v. Tennessee Valley Authority, supra.* In *Queen*, the Sixth Circuit Court of Appeals considered the extent of immunity of TVA and its officials in the context of liability for defamation. After a consideration of both the scope and basis for immunity, that court held that public policy dictates that TVA, as a wholly government owned corporate entity engaged in matters authorized by statute, is entitled to the immunity from suit which would be afforded the federal government were it in TVA's situation. *See Queen, supra* at 85–87; *Smith v. Tennessee Val-*

*ley Authority*, 436 F.Supp. 151 (E.D.Tenn. 1977).

In the present case, this Court must interpret the TVA Act so as to give TVA the broadest authority to carry out the purposes of Congress. *See Young v. Tennessee Valley Authority*, 606 F.2d 143, *cert. denied*, 455 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 776 (6th Cir.1979); *U.S. ex rel. and for Use of TVA v. Easement and Right of Way Over Two Tracts of Land in Logan County, Ky.*, 246 F.Supp. 263 (W.D.Ky. 1965), *aff'd*, 375 F.2d 120 (6th Cir.1967). In this light, the Court finds TVA's actions in this case to be within its statutorily set functions, and that the United States would be entitled to immunity from suit on a theory of promissory estoppel if it were in TVA's position. *See Jablon, supra.* Consequently, Hoke's claim in promissory estoppel must be dismissed.

### Public Policy

■ Hoke claims that TVA's consideration of union status in awarding a procurement contract was not authorized in the TVA Act and that therefore, such an action was violative of that statue and opposite federal public policy as evidenced by the provisions of several other federal statutes. *See, e.g.,* 29 U.S.C. § 175 (National Labor Relations Act); 42 U.S.C. § 6701 *et seq.* (Public Works Employment Act of 1976); 25 U.S.C. §§ 450–58, 450e(b) (1974 Indian Self Determination Act); 41 U.S.C. §§ 35–45 (Walsh-Healey Act).

The Court has spent some time trying to identify a basis for Hoke's public policy and TVA statute claims, but has been unable to do so. Hoke's claims along these lines are phrased in broad, conclusory terms, and Hoke has never clarified them nor cited the Court to any substantial legal basis upon which Hoke should recover. As to Hoke's citation to other federal statutes, this Court need not explain the inconsistencies of Congress in enacting different statutes at different times which address different needs. This Court has noted the provisions of the statutes cited; however, their application toward explaining either

the TVA statute or the public policy behind the TVA statute is dubious.

TVA occupies a peculiar place in the law and Congress has granted TVA broad powers in order to effectuate its purposes. The Court finds particularly apt the public policy expressed in the TVA statute itself, 16 U.S.C. § 831n–4(f), that power generated by TVA "shall be sold at rates as low as are feasible." *See* 16 U.S.C. § 831n–4(f) (1976).

There is no legally sufficient basis upon which this Court can grant relief on Hoke's public policy and TVA statute claims. Accordingly, these claims shall be dismissed.

## OTHER STATUTORY CLAIMS

In Paragraph 13 of its Complaint, Hoke claims that TVA's actions constituted a violation of the TVA competitive bidding statute, 16 U.S.C. § 831h(b), violation of TVA's internal regulations, and violation of 5 U.S.C. § 552(b), the Government in the Sunshine Act. Although not pressed as vociferously as its other claims, Hoke apparently did not revise or supersede these claims out of its cause of action by virtue of its Brief in Opposition to Defendant Tennessee Valley Authority's Motion to Dismiss or in the Alternative, for Summary Judgment. The Court shall therefore consider all of these claims in resolving TVA's Motion to Dismiss.

## STANDING:

### Competitive Bidding Statute

██ Hoke claims that TVA's actions constituted a violation of the TVA competitive bidding statute, 16 U.S.C. 831h(b). Competitive bidding statutes are for the

protection of the Government rather than of offerors, and confer no litigable rights on disappointed offerors. *See Perkins v. Lukens Steel Co.,* 310 U.S. 113, 127, 130, 60 S.Ct. 869, 878, 84 L.Ed. 1108 (1940); *Cincinnati Elecs. Corp. v. Kleppe,* 509 F.2d 1080, 1086 (6th Cir.1975) ("Absent such a congressionally created exception, the general rule of *Perkins v. Lukens Steel, supra,* that a disappointed bidder has no legally enforceable right against the government's award of a procurement contract retains its validity."). This general rule is applicable to actions by disappointed bidders who have been rejected under the TVA statute,[8] which confers no special standing to such bidders. *See GF Business Equip., Inc. v. Tennessee Valley Authority,* 430 F.Supp. 699, 703 (E.D.Tenn. 1975), *aff'd,* 556 F.2d 581 (6th Cir.1977) (a disappointed bidder must show that he (1) has suffered injury in fact, and (2) is found to be arguably within the zone of interests protected by the relevant statute in question, 16 U.S.C. 831h.) *See also Honeywell, Inc. v. Tennessee Valley Authority,* 636 F.2d 1217 (6th Cir.1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1998, 68 L.Ed.2d 311 (1981); *PRI Pipe Supports v. Tennessee Valley Authority,* 494 F.Supp. 974, 977 (N.D.Miss.1980) (legislative history of statute does not reveal an intent to create a legal or proprietary interest in all bidders); *Inryco, Inc. v. Tennessee Valley Authority,* 471 F.Supp. 59 (E.D.Tenn.1978).

Hoke has no standing to sue for a violation of 16 U.S.C. 831h(b).

### TVA Procurement Code

██ Hoke claims that TVA's actions constituted a violation of TVA's internal pro-

---

**8.** Section 831h(b) provides in pertinent part: All purchases and contracts for supplies or services, except for personal services, made by the Corporation, shall be made after advertising, in such manner and at such times sufficiently in advance of opening bids, as the board shall determine to be adequate to insure notice and opportunity for competition: Provided further, That in comparing bids and in making awards the Board may consider such factors as relative quality and adaptability of supplies or services, the bidder's financial responsibility, skill, experience, record of

integrity in dealing, ability to furnish repairs and maintenance services, the time of delivery or performance offered, and whether the bidder has complied with the specifications.

* * * * *

Provided, That, subject only to the provisions of the Tennessee Valley Authority Act of 1933, as amended, the Corporation is authorized to make such expenditures and to enter into such contracts, agreements, and arrangements, upon such terms an conditions and in such manner as it may deem necessary ...

curement code.[9] Although there are some factual disputes concerning waiver of conditions imposed by these regulations, the Court does not find the facts in dispute to be material. In the first instance, TVA's internal regulations were not intended to or create independent rights in disappointed bidders such as Hoke for their violation. Hoke is not within the class of interest protected by TVA regulations, and so has no standing to seek redress for their violation. *See Inryco, Inc.* at 60.[10]

### Sunshine Act

Hoke claims that TVA's "agenda meeting" constituted a violation of 5 U.S.C. § 552(b) (1976) and 18 C.F.R. § 1301 *et seq.* (1977) because the meeting was closed to the public, and the matter of Hoke's bid was decided in that meeting. Upon consideration of Hoke's claim, the Court finds that Hoke has not stated grounds upon which this Court may grant relief under the Sunshine Act or the TVA regulations promulgated thereunder.

▮ Neither the Sunshine Act nor TVA's regulations under the Act define "meetings" so as to prohibit preliminary discussions which do not result in joint conduct or disposition of official agency business. *See Pacific Legal Foundation v. Council on Environmental Quality,* 636 F.2d 1259 (D.C.Cir.1980); 18 C.F.R. § 1301.42(b). The most that can be said about the Board's actions at the "agenda meeting" of June 29, 1984 is that it decided to not to decide whether to accept Hoke's bid under Requisition 62 until after further study of the matter. The Board's official and final rejection of Hoke's offer was taken in a public meeting on July 20, 1982. That meeting has not been attacked as violative of the Sunshine Act.

▮ Hoke apparently seeks to have TVA's actions at the agenda meeting declared invalid. However, even if the Board's meeting did constitute a violation of the Sunshine Act, such a violation did not did not invalidate the Board's action taken at the meeting. *See Railroad Comm. of Texas v. United States,* 765 F.2d 221 (D.C.Cir.1985); *Investment Co. Institute v. Federal Deposit Ins. Corp.,* 728 F.2d 518 (D.C.Cir.1984); *Pan Am. World Airways Inc. v. Civil Aeronautics Bd.,* 684 F.2d 31 (D.C.Cir.1982); *Consolidated Aluminum Corp. v. Tennessee Valley Authority,* 462 F.Supp. 464, 478 (M.D.Tenn. 1978). Hoke's claim under the Sunshine Act shall be dismissed.

## CONSTITUTIONAL CLAIMS

### First Amendment *Jus Tertii* Standing

Hoke claims that TVA's actions in considering union status in awarding its procurement contract under Requisition 62 constituted discrimination against nonunion contractors. Moreover, Hoke claims that TVA's actions were violative of the first amendment right to freedom of association

---

9. TVA's internal code provides in pertinent part:

    If after due advertisement no bids are received which meet TVA's procurement requirements and in TVA's opinion further advertisement would not obtain acceptable bids, the purchases may be made by negotiation subject to the following conditions:

    1. The negotiated agreement to obtain such matter or services is made within 90 calendar days following the date (a) scheduled for opening bids when no bids are received in response to the last invitation issued pursuant to the particular requisition, or (b) that the bids received in response to the last invitation issued pursuant to the particular requisition are rejected;

    2. The materials or services so obtained conform in all material respects to specifications under the last invitation issued pursuant to the requisition; and

3. The delivery or performance date stipulated in the negotiated purchase is not a later date than could have been accepted in the last invitation issued pursuant to the requisition.

10. The Court in *Inryco,* considering a claim similar to the one set forth herein stated,

    [I]nternal regulations and directives such as the present administrative release on procurement have been held to constitute managerial and policy tools to aid in the procurement of supplies and services for the United States and not to provide implied private rights of action.... In the present case the Court is of the opinion that the TVA administrative release on procurement cannot reveal a congressional intent that an unsuccessful bidder on a TVA contract is within the zone of interests to be protected by 16 U.S.C.A. § 831h.

    *Inryco* at 60.

of the contractors' employees. Hoke seeks to assert the violation of its employees' constitutional rights through the application of the doctrine of constitutional *jus tertii* standing.[11] *See* Note, *Standing to Assert Constitutional Jus Tertii*, 88 HARV. L.REV. 423 (1974). Hoke claims that it should be allowed to assert the violation of the constitutional rights of its employees because its employees, as a group, are economically less capable of asserting their own rights than Hoke, and the injury was done to the employees through action directed at Hoke.

In order to assert the violation of its employee's rights, Hoke must meet the requirements of standing. Whether a party has standing to sue depends on whether 1) the party has alleged an injury in fact, representing a sufficiently concrete interest in the outcome of the suit to make it a case or controversy within the jurisdiction of the federal courts under Article III, and 2) whether the party is a proper proponent of the legal rights which it asserts. *See Singleton v. Wolff,* 428 U.S. 106, 96 S.Ct. 2868, 2673, 49 L.Ed.2d 826 (1976); *Haskell v. Washington Tp.,* 635 F.Supp. 550, 552 (S.D.Ohio 1986).

To satisfy the injury in fact requirement, the party must show that 1) that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant; 2) the injury can fairly be traced to the challenged action; and 3) the injury is likely to be redressed by a favorable decision. *See Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 106 S.Ct. 1326, 1332, 89 L.Ed.2d 501 (1986). In this case, it is difficult to find that Hoke has suffered any injury in fact which can be fairly traced to the challenged action by TVA. However, even assuming that Hoke has demonstrated a sufficient "injury in fact," the wise application of the prudential principles behind permitting third party standing indicate Hoke is not the proper party to assert its employee's rights. *See generally* C.

Wright and A. Miller, *Federal Practice and Procedure* § 3531.9.

Generally speaking, a party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Phillips Petrol. Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 2971, 86 L.Ed.2d 628 (1985); *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). However, where the Court finds that there is "some genuine obstacle to" the third party asserting his rights, and "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue" then the litigant may be the proper person to assert the third party's right before the Court. *See Singleton v. Wolff, supra* at 2874–75; *Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 104 S.Ct. 2839, 2847, 81 L.Ed.2d 786 (1984).

What constitutes a "genuine obstacle" to a third party's suit is not entirely clear. Some cases are illustrative. A third party faces a genuine obstacle to the assertion of his right if by litigating the issue, the third party would vitiate or chill the right which he seeks to protect. *See Singleton v. Wolff, supra; NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Communist Party of the U.S. v. Subversive Activities Control Bd.,* 367 U.S. 1, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961). Another genuine obstacle to the assertion of a third party's rights is the problem of mootness. If the violation of the third party's rights will always resolve itself before it can be practicably litigated, then it is functionally impossible for the third party to bring suit to protect his rights. In such a case, third party standing is most appropriate. *See, e.g., Singleton v. Wolff, supra.* Still another genuine obstacle is found where the injured third party is contractually, or procedurally excluded from bringing suit. *See Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

---

**11.** In the vernacular, *jus tertii* means simply "the right of a third party." *See* BLACK'S LAW DICTIONARY (1968).

In the present case, Hoke asserts *jus tertii* standing on the grounds that it is the party most economically capable of pressing this suit. While the high cost of litigation may cumulatively create a genuine obstacle, *e.g., Haskell, supra* at 555, cost alone does not constitute a genuine obstacle to an action by a third party to protect his own rights. It would be imprudent to grant constitutional *jus tertii* standing to Hoke on the basis of the cost of litigation alone.

The Court notes that the relationship between Hoke as employer and its nonunion employees is not the type of relationship generally considered close enough to the protected action to support *jus tertii* standing. *See, e.g., Singleton v. Wolff* (physician/abortion patient); *Birth Control Centers, Inc. v. Reizon,* 743 F.2d 352, 358 (6th Cir.1984) (physician/abortion patient). Hoke's employment by TVA is not necessary for Hoke's employees to exercise their right to associate or not associate with a union. Indeed, this Court can find nothing to indicate that the enjoyment of Hoke's employees' right to associate is inextricably bound up with the activity which Hoke wishes to pursue. This case does not present a circumstance of the violation of integral constitutional rights, *e.g., Minnesota v. National Collegiate Athletic Association,* 560 F.2d 352, 363–64 (8th Cir.1977) (NCAA rule requiring action by University officials violated athlete's right to due process, and University official's constitutional duties to athletes), nor the violation of cognate rights, *e.g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 96 S.Ct. 1817, 1822–1823, 48 L.Ed.2d 346 (1976) (statute which prohibited advertising by pharmacists violated pharmacists and consumers' right to free speech). Nor does this case present a situation in which the resolution of this suit will have a direct consequence on the exercise of the third party's right. *E.g., NAACP v. Alabama ex rel. Patterson, supra* (order to reveal names of members would violate members right of association); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (conviction of defendant for giving contraceptives to married persons directly determined rights of married persons to contraceptives). In short, Hoke does not have a concrete, direct stake in the right asserted here. For this reason, the Court is troubled as to whether Hoke's employees would want to assert their rights in this case, or if they would, whether they are not the most effective advocates to press such claims. This factor, combined with the lack of any genuine obstacle to suit by Hoke's employees indicates that it would be imprudent to grant Hoke standing to press this issue.

### Fifth Amendment Equal Protection

Hoke claims that TVA's actions in classifying coal contractors according to union status constituted a violation of Hoke's right to equal protection of the laws under the fifth amendment. TVA claims that its classification was based upon its concern with whether Hoke was a "responsible" contractor under TVA regulations.[12] A responsible bidder is one that is able to comply with the contract, particularly its delivery schedule. *Cf.* 41 C.F.R. § 1-1.-1203,-1.1203-1 (1983).

TVA claims that consideration of the strife that might be caused by supplies of nonunion coal and the possibility of interrupted delivery by union opposition was a rational basis upon which to classify bidders for the purpose of determining their ability to comply with the proposed contract. *Cf. Motley Constr. Co.,* 81–2 Comp. Gen.Procurement Dec. (Fed.Pubs.) para. 465 (Dec. 14, 1981); *Anderson & Wood Constr. Co.,* 83–1 Comp.Gen.Procurement Dec. (Fed.Pubs.) para. 595 (June 2, 1983).

A classification of the type used by TVA in this case must be approved if there is some reasonable basis therefore. *See Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Image Carrier Corp. v. Beame,* 567 F.2d 1197 (2d Cir.1977), *cert. denied,* 440 U.S. 979, 99 S.Ct. 1785, 60 L.Ed.2d 239 (1979); *Memphis*

---

12. *See* TVA Code IV PROCUREMENT, Exhibit B to Plaintiff's Complaint at 4: "When requirements are advertised, purchases normally are made from the lowest responsible bidder meeting all conditions of the bid form and whose bid conforms to the specifications."

*Am. Federation of Teachers Local 2032 v. Board of Education,* 534 F.2d 699 (6th Cir.1976). TVA has shown a rational basis for its classification, and its classification was made to promote a legitimate governmental purpose.

This Court shall not second guess the TVA Board of Directors in a matter committed to the Board's discretion by Congress. *See PRI Pipe Supports v. Tennessee Valley Authority,* 494 F.Supp. 974, 977–78 (N.D.Miss.1980); 16 U.S.C. § 831c(d) (1982) (TVA is broadly empowered to "make contracts, as herein authorized."); 16 U.S.C. § 831h(b) (1982).[13] Accordingly, TVA's Motion for Summary Judgment will be granted on Hoke's claim under the fifth amendment.

An appropriate Order accompanies this memorandum.

---

**13.** Section 831h(b) states in pertinent part: [S]ubject only to the provisions of the Tennessee Valley Authority Act of 1933, as amended, the Corporation is authorized ... to enter into such contracts, agreements, and arrangements, upon such terms and conditions and in such manner as it may deem necessary ... The Ccrporation shall determine ... the forms and contents of its contracts and other business documents except as otherwise provided in the Tennessee Valley Act of 1933.