Rose Ann WILKERSON, Ray Wilkerson and Sharon Sutton, Plaintiffs-Appellees,

v.

Harold JOHNSON, Fred Bush, Roy "Bud" Nail, Jr., and Lola Wooldridge, Defendants-Appellants.

Nos. 81–5189, 81–5254.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 14, 1982.

Decided Feb. 9, 1983.

Charles R. Ray, Nashville, Tenn., for defendants-appellants in No. 81–5189.

Henry A. Martin (argued) Nashville, Tenn., for Nail & Wooldridge.

Clinton Swafford, Swafford, Davis, Peters & O'Neal, Winchester, Tenn., for Bush.

W.P. Boone Dougherty, Knoxville, Tenn., for plaintiffs-appellees.

Before ENGEL and MERRITT, Circuit Judges, BROWN,[*] Senior District Judge.

MERRITT, Circuit Judge.

The defendants, agents of the Tennessee Board of Barber Examiners, a state licensing agency, appeal a jury verdict for compensatory and punitive damages awarded under 42 U.S.C. § 1983 (1976). Plaintiffs, applicants for a license to operate a barber shop in Knoxville, claim that defendants deprived them of liberty and property without due process by refusing them a license. The principal question on appeal is whether a private citizen who competes in business with a state regulatory official is unconstitutionally deprived of a liberty or property interest when that official, acting in concert with others on the regulatory board, intentionally misapplies state licensing law to keep her from obtaining an occupational license. We hold that such conduct violates due process and affirm the judgment of the District Court.

## I. FACTS

In July, 1978, plaintiffs Rose Ann Wilkerson and Sharon Sutton decided to open a barber shop next to their beauty salon, the His-N-Hers Styling Salon. Defendant Johnson was a member of the Tennessee Board of Barber Examiners and customarily inspected and licensed shops in the Knoxville area. He also operated a barber shop next door. He refused to license plaintiffs'

---

[*] The Honorable Wesley E. Brown, Senior Judge, United States District Court for Kansas, sitting by designation.

barber shop until they had erected a wall between the salon and the barber shop and had installed a second bathroom, neither of which were required under state law.[1]

Defendants Bush and Nail, who were members of the Barber Board, also inspected plaintiffs' place of business, stopping by Johnson's shop for discussions before and after their inspection. By then plaintiffs had constructed the wall. The fixtures for the second bathroom were present but had not been connected. Bush and Nail agreed to license the shop conditioned upon plaintiffs' agreement to hook up the second bathroom within five days. Plaintiffs decided that the bathroom order was illegal and refused to install it. The state regulatory officials returned five days later to check on the bathroom but did not attempt to further enforce the order.

During the autumn of 1978, plaintiff Sutton was licensed only as an apprentice barber. Under Tennessee law, a master barber must manage all barber shops and supervise apprentice barbers. T.C.A. §§ 62–309, 62–318. On several occasions, Johnson inspected Wilkerson's shop and found the master barber not present. The Barber Board sent an inspector to the Shop on December 12, 1978, who discovered that the master barber was no longer employed. Plaintiffs received cease and desist orders on December 27, 1978, because of the operation of the shop without a master barber.

Sutton applied twice to take the Master Barber's exam, in January and March, 1979. Both times she was told by defendant Lola Wooldridge, the Executive Secretary of the Board, that she could not take the exam because of questions about the amount of time she had spent as an apprentice and the genuineness of a signature on her application. After intervention by another state official, Sutton took the exam and was licensed. The Board voted to bring charges against Wilkerson for operating her shop without a master barber. Those charges were served on Wilkerson in April, 1979, but were dismissed in June, 1979.

Plaintiffs brought suit on the theory that the defendants had conspired to harass and deprive them of the right to pursue their occupations in order to eliminate competition with Johnson's barber shop. The jury found for the plaintiffs, awarding Sutton $350.00 compensatory and $1,000.00 punitive damages against all defendants and awarding the Wilkersons $500.00 compensatory and $2,500.00 punitive damages against all defendants.

Defendants appeal the judgment on the following grounds: (1) Plaintiffs do not state a proper cause of action under 42 U.S.C. § 1983. (2) Defendants are insulated from liability under the doctrine of official immunity based on good faith. (3) The evidence is insufficient to support the jury's finding of an unlawful conspiracy against the plaintiffs. (4) The District Court erred in denying defendant's post-trial request to interview jurors.

## II.

There is no question here under § 1983 that the defendants acted under color of state law. All are state administrative officials who used the authority vested in them by the state to regulate plaintiffs' business. Defendants do not challenge this aspect of the case. Rather, they argue that

---

1. At the time in question, the published Board regulations did not require two bathrooms or a *partition in dual barber shops/beauty salons.* The Board had passed a resolution in respect to dual shops which would require both a partition and a second bathroom but such a resolution had no legal effect under T.C.A. 4–5–103(b), which governed administrative rule-making procedures at the time in question.

   Three of the four defendants admitted on cross examination that they knew the Barber Board regulations did not require a dual shop to have two bathrooms or a partition, and that

the Board resolution was of no legal effect. Defendant Johnson claimed that at the time he first spoke to the Wilkersons he thought two bathrooms and a partition were required by law, but discovered soon thereafter that no such rule existed. (Tr. 755–56.) Defendants Bush and Nail admitted knowing all along that two bathrooms and a partition were not required. (Tr. 863, 891.) At the August 7, 1978 Board meeting, Bush made a motion to draft such a rule. As of the time of trial, no rule had been promulgated. (Tr. 757–59).

there was no deprivation without due process of a constitutional interest cognizable under § 1983.

The constitutional interests protected by due process—said to find their origins in the *Magna Carta, see Hurtado v. California,* 110 U.S. 516, 531, 4 S.Ct. 111, 118, 28 L.Ed. 232 (1884)—are "life, liberty and property." Our method of inquiry is to determine first whether plaintiffs' interests are entitled to protection and second whether defendants violated the process due them.

■ Liberty and property interests are intricately related in our system of political economy, a system based on free choice of careers and occupations, private property, and the right to compete. *Lynch v. Household Finance Corp.,* 405 U.S. 538, 552, 92 S.Ct. 1113, 1122, 31 L.Ed.2d 424 (1972) (Justice Stewart for the Court observed that "a fundamental interdependence exists between the personal rights to liberty and the personal right in property.") A complex of rights and duties characterizes any particular liberty or property interest. Generally speaking, freedom to choose and pursue a career, "to engage in any of the common occupations of life," *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), qualifies as a liberty interest which may not be arbitrarily denied by the State. When governmental institutions regulate careers or occupations in the public interest through the licensing process, their definitions of rights in a license or other statutory entitlement may give rise to competition rights and constraints that define property interests. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) ("suspension of issued licenses thus involves state action that adjudicates important interests"); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (statutory entitlement to employment protected). The regular and impartial administration of public rules governing these interests, as required by due process, prohibits the subtle distortions of prejudice and bias as well as gross governmental violations exemplified by bribery and corruption and the punishment of political and economic enemies through the administrative process. *Gibson v. Berryhill,* 411 U.S. 564, 578–79, 93 S.Ct. 1689, 1697–98, 36 L.Ed.2d 488 (1973) (procedural due process violated by Alabama State Board of Optometry because those "with substantial pecuniary interests in legal proceedings should not adjudicate those disputes").

In *Hampton v. Mow Sung Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), a case which invalidated a civil service rule barring all non-citizens from employment in the federal civil service system, Justice Stevens discusses a number of considerations in cases such as this concerning governmental interference with the freedom to pursue an occupation. Two of the factors discussed are the nature and seriousness of the infringement and the strength of the justifications given. In the instant case the infringement caused by the defendant officials was harassment and delay in allowing plaintiffs to pursue their occupation. They brought about the delay by enforcing a costly rule known to be invalid. The jury found that they did so in order to deter plaintiffs from opening their shop next to Johnson's barber shop. No arguments are made in defense of the rule's enforcement. The infringement is sufficiently serious, and the reasons given in justification for the delay so lacking in substance as to constitute a due process violation of plaintiffs' "liberty" interests. We therefore need not decide whether the delay in the licensing process also infringed plaintiffs' "property" interests.

Here the licensing of the new barber shop next door would have created direct and significant competition for Johnson. There was testimony that Johnson expressed unwillingness to allow a barber shop to open next door to him. Johnson clearly had the kind of interest in the licensing decision which creates an unconstitutional risk of bias.

Defendants Bush, Nail, and Wooldridge had no direct pecuniary interest in the licensing decision since they were not direct competitors of Wilkerson. The evidence shows, however, that Bush and Nail were

friends of Johnson and that they stopped in Johnson's shop before and after the inspection of Wilkerson's premises. During the inspection they called and consulted with Wooldridge about the possibility of granting a conditional license. There was ample evidence for the jury to find bias on the part of all the defendants sufficient to violate plaintiffs' due process rights.

### III.

■ Appellants argue that the defendants did not violate the Due Process Clause because the state provided a procedure to remedy any abuse which might have occurred. They contend erroneously that the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), controls this case and precludes our finding a § 1983 violation under these facts.

*Parratt* was a suit by a prisoner against prison officials for the negligent loss of hobby materials he had ordered. The Supreme Court held that because state law provided a cause of action for tortious losses at the hands of state officials, the state had given all the process that was due. The plaintiff could not assert a deprivation without due process based on his own failure to take advantage of the state remedy.

*Parratt* does not control this case for two reasons. First, the holding in *Parratt* must be construed in light of the Supreme Court's recent decision in *Patsy v. Board of Regents of State of Florida,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In that case, the Court held that § 1983 plaintiffs need not exhaust state administrative remedies before bringing an action in federal court. Since the decision in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), it has been the rule that a § 1983 plaintiff need not attempt to vindicate his or her claim in state court before asserting it in federal court. To apply the holding of *Parratt* outside the prisoners' rights context is inconsistent with *Monroe* and *Patsy.* The considerations that require prior exhaustion of state administrative remedies in state tax cases before bringing

a § 1983 action for damages, *see Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981); Note, *The Supreme Court, 1981 Term,* 96 Harv.L.Rev. 207 (1982), do not apply here. There appear to be no strong considerations of congressional or judicial policy that require the claimants to first pursue state administrative or judicial remedies.

Even if we were to construe *Parratt* broadly, the Tennessee law which, according to defendants, provides all the process due the plaintiffs, T.C.A. § 9–8–207, creates a remedy for injuries based on the *negligence* of state officials. Its language explicitly excludes injury or damage resulting from "the actual fraud, malice or corruption" of the official. This statute was of no use to these plaintiffs who sought damages, both compensatory and punitive, for malicious conduct. Likewise, the criminal statute penalizing "official oppression," T.C.A. § 39–3203, might punish the defendants but would not redress the injury to the plaintiffs. In short, the State does not provide under these particular statutes on which the defendants rely the process necessary to redress plaintiffs' injury. It was therefore proper to bring a § 1983 action in federal court. *See A & A Concrete, Inc. v. White Mountain Apache Tribe,* 676 F.2d 1330 (9th Cir.1982) (allegations that a sheriff conspired with defendants to put plaintiffs out of business by fraudulent service of process states a § 1983 cause of action).

### IV.

A. Good Faith Immunity.

■ Appellants erroneously rely on this Court's opinion in *Jihaad v. O'Brien,* 645 F.2d 556 (6th Cir.1981) in support of their argument that they are entitled to judgment based on good faith immunity. *Jihaad* stands for the proposition that an official who relies on a facially valid regulation is entitled to good faith immunity. The Barber Board had only issued a Board resolution which was in the nature of a proposed regulation. It had never been

published or adopted according to the state administrative procedure act. Defendants Bush and Nail admitted knowledge that the current law did not require two bathrooms or a partition in dual shops. Defendant Johnson said he became aware of the law soon after his initial meeting with the Wilkersons in early August, 1978. Nevertheless, they tried to impose such a requirement on plaintiffs. Defendants had the burden of proving their good faith, and they clearly failed to carry it.

### B. Sufficiency of the Evidence.

A careful review of the record reveals sufficient evidence to support the jury verdict. A reviewing court should defer to a jury verdict and reverse it only if it is left with the definite conviction that a mistake has been made. *Vesey v. United States,* 626 F.2d 627 (9th Cir.1980). According to the plaintiffs' testimony, which the jury chose to believe, defendant Johnson feared competition from plaintiffs' shop and harassed plaintiffs in order to deter them from opening a shop next door. Defendants Nail and Bush consulted Johnson before and after the August 24 inspection and were reluctant to license the shop without the second bathroom, although they knew it was not required by the Board rules. Nail went back to check on it although he apparently did not intend to enforce the rule. Wooldridge discussed the Wilkersons' shop with several of the defendants and participated in delaying Sutton's sitting for the master barber exam, and there was evidence that Johnson offered to insure her continued employment in return for her cooperation in the Wilkerson matter.

### C. Refusal of Judge to Allow Defense Attorneys to Interview Jurors

The decision whether to allow attorneys to interview jurors after a trial lies in the sound discretion of the trial judge. *Cf. McCoy v. Goldston,* 652 F.2d 654 (6th Cir.1981) (abuse of discretion standard applies to request for evidentiary hearing on jury misconduct). Defendants' request was based only on their belief that there was insufficient evidence to support the verdict. They did not allege that improper outside influences were brought to bear on the jury, but simply sought to inquire as to the reasons for the verdict. This is not a proper subject of inquiry. *Walker v. United States,* 298 F.2d 217 (9th Cir.1962).

For the foregoing reasons, we affirm the judgment of the District Court. We decline, however, to award the costs of this appeal to the prevailing party. Courts have broad discretion in the awarding of costs in favor of or against parties to a proceeding. *National Labor Relations Board v. Brashear Freight Lines,* 127 F.2d 198 (8th Cir.1942). In this case, counsel for plaintiffs-appellees, W.P. Boone Dougherty of Knoxville, Tennessee, willfully violated the rules of this Court by failing to file a brief on appeal and to appear for oral argument. Accordingly, the costs of this appeal will be taxed to the appellees.