**Carl SANDERSON, d/b/a Cue Room Family Billiards, Plaintiff-Appellant,**

**v.**

**VILLAGE OF GREENHILLS, et al., Defendants-Appellees.**

**No. 82–3707.**

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 26, 1983.

Decided Feb. 1, 1984.

Joseph G. Carr, Sharon A. Sullivan, Cincinnati, Ohio, for plaintiff-appellant.

Nicholas A. Perrino, Cincinnati, Ohio, for defendants-appellees.

Before JONES and KRUPANSKY, Circuit Judges, and COOK, District Judge.*

PER CURIAM.

This is an appeal by Carl Sanderson (Sanderson), d/b/a Cue Room Family Bil-

---

* Hon. Julian Abele Cook, Jr., United States District Judge, Eastern District of Michigan, sitting   by designation.

liards, from a decision below which held that Sanderson had not stated a cause of action pursuant to 42 U.S.C. §§ 1983, 1985 against the Village of Greenhills arising out of the Village's attempt to enforce an amusement device licensing ordinance. The district court further held that, even if § 1983 jurisdiction could be established, the federal court would abstain rather than enjoin state proceedings over the propriety of applying the ordinance to Sanderson's poolroom.

The facts are straightforward and undisputed. Sanderson leased a storefront in Greenhills, Ohio in late July 1982 with the intention of opening a poolroom at that site. Sanderson contacted the Village Administrator (David Moore) to inquire about the necessity of obtaining a license for the pool room under Ordinance 81–19–L which required the licensing of "amusement devices" within the Village. Moore informed the appellant that Ordinance 81–19–L was applicable only to coin operated amusement devices and so would not compel licensing of the planned pool tables. However, one unidentified Council member opined that Sanderson's business would need, but would not receive, "approval" from Council, although it is not clear if it was intended that Council "approval" be construed as obtaining a license under the ordinance.

After three weeks of remodeling, during which time a sign clearly visible from the street announced the nature of the new business, Sanderson opened his establishment at 4:00 p.m. on August 24, 1982. At approximately 7:00 p.m. the police chief, one Albertson, entered the poolroom and ordered it closed as a consequence of being unlicensed. The officer furnished appellant with a copy of the relevant ordinance and an application for a license. However, the officer, acting at the behest of Council, also related that Sanderson would not get a license. Sanderson, who had not previously applied for a license, was given the option of "voluntarily" closing the business and applying for an unobtainable license, or incurring the criminal penalty for violating the ordinance. Sanderson closed the business and thereupon filed the instant suit seeking damages for the purported civil rights violation and to enjoin enforcement of the licensing ordinance.

At the preliminary injunction hearing, the district judge initially determined that Sanderson had not shown a deprivation of any Constitutional right, inasmuch as there is no right, simply because one owns property, to obtain a license for use of that property in a particular way, and there is no federal right to be free from merely erroneous enforcement of local ordinances. The district court also held that, in the event Sanderson could establish a § 1983 action, a federal court should abstain from enjoining the enforcement of the licensing law until Ohio courts passed upon the applicability of the statute to the appellant. The present appeal ensued.

It should be noted that Sanderson has, since the filing of the instant appeal, been acquitted of charges that he violated the ordinance at issue, on the grounds that the ordinance was inapplicable to billiard tables not operated by a coin or token. Consequently, appellant is now operating his business and the issue of injunctive relief appears moot. However, the claim for damages remains at bar.

■ The district judge, although citing the doctrine of abstention as an alternate foundation for the lower court's holding, relied upon three lines of analysis to collectively establish that Sanderson had no § 1983 or § 1985 cause of action and therefore the court had no jurisdiction: 1) mere ownership of property does not create a right to receive a license for a particular use of that property or to receive procedural due process in the application process; 2) there is no federal right to be free from simply erroneous applications of otherwise valid state laws; 3) there is no proof here that the amusement devices ordinance was inequitably applied on racial or other class-based grounds. Sanderson does not contest the third prong of the court's reasoning concerning § 1985; the remaining two elements of the § 1983 claim will be reviewed seriatim.

The operative section of Ordinance No. 81–19–L is the definitional section wherein the statute purports to require a license for operation of any amusement device that conforms to the following description:

"Amusement device" means any machine, device or instrument including, but not limited to, pinball, pool tables and video games upon the insertion of a coin, token, slug or card, operates or may be operated for use as a game, a contest or test of skill or other amusement of any description. "Amusement device" does not include vending machines.

Ord. 81–19–L, Section I(a), passed March 17, 1981. The Ordinance further provides that the Safety Director may license each such device, upon the payment of a $500.00 annual fee per device, if the applicant is a five-year resident of the county, of good moral character and does not operate the device in an "amusement arcade" (defined as a place of more than 6 devices or where devices are the "primary or principal source of income,") or less than 500 feet from a school or playground, or permit it to be operated by anyone under 18 years of age.

In order to maintain an action under 42 U.S.C. § 1983, a person must show that he has been deprived of a "right[ ], privilege[ ], or immunit[y] secured by the Constitution" by another person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory * * *." Where the plaintiff asserts that the right at issue is a property interest, the property right must be a creation of state law, since "the Constitution does not create property interests. Rather, it extends various procedural safeguards to certain interests 'that stem from an independent source such as state law.'" *Leis v. Flynt,* 439 U.S. 438, 439, 99 S.Ct. 698, 699, 58 L.Ed.2d 717 (1979) *quoting Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). *Accord, Rodic v. Thistledown Racing Club,* 615 F.2d 736 (6th Cir.1980). Thus, in *Roth,* the following guidelines were articulated by the Supreme Court for the discernment of property interests:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

408 U.S. at 577, 92 S.Ct. at 2709.

In the matter at bar, it is incumbent upon Sanderson to prove that he possessed more than mere "need or desire" for a license, and more than an "expectation" that he would receive it. He must show, rather, a "legitimate claim of *entitlement*" to an amusement license. *Id.* As one who would have been an initial applicant for a license, the appellant is analogous to the original applicant for a liquor license, *Shamie v. City of Pontiac,* 620 F.2d 118 (6th Cir.1980), or the new applicant for food stamps, *Banks v. Block,* 700 F.2d 292 (6th Cir.1983), in that he has no "claim" upon the license. His status herein is not comparable to that of the welfare recipient who is cut from the rolls, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1974), the parolee facing revocation of his parole, *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), or the driver confronting cancellation of his license, *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). In each of the foregoing cases, the plaintiff possessed a clear, legitimate claim to welfare benefits, a parole, or an operator's license, which present entitlement was in danger of being extinguished. In such cases, the property right could not be removed without due process. In the instant matter, Sanderson was not entitled to a license and thus he suffered no constitutional injury upon its deprivation.

However, Sanderson's complaint also constructively charges a denial of a "liberty" interest to engage in whatever legal business he elects to pursue without arbitrary interference. Although the defend-

ants, and the court below, are quite correct in asserting that there can be no *unfettered* freedom to engage in a business which may be properly regulated pursuant to a municipality's general police power, such an assertion does not resolve the issue of whether the clear freedom, or liberty, to engage in even a potentially regulated business was *properly* circumscribed in this case. A recent decision by the Seventh Circuit, *Reed v. Village of Shorewood,* 704 F.2d 943 (7th Cir.1983) is analogous and persuasive. In *Reed,* town officials were accused of harassing a bar owner because his bar featured live rock and roll music. The tavern owner claimed that the harassment by the village was motivated by antipathy to rock and roll, and thus injured his liberty of speech. *Id.* The Seventh Circuit, while accepting that freedom of speech is not absolute and that states retain considerable authority under the Twenty-First Amendment to regulate liquor, also noted that the village acted against the bar simply upon the officials' "unmotivated and unreasonable" opposition to rock music. *Id.* at 950.

In the case before this court, there was evidence adduced, which was unchallenged as to accuracy, which indicated that Greenhills' officials simply did not desire a billiard parlor in the village. The Administrator, purportedly acting on the advice of the Solicitor, represented to Sanderson that the amusement device Ordinance did not reach the operation of conventional pool tables. Yet, a Council member apparently asserted an inherent municipal power to "approve" a new business within the village, arguably irrespective of any existing regulatory ordinance and solely upon "unmotivated and unreasonable" opinions of that business. It is this type of conduct which does state a claim under section 1983 and which, therefore, compels further proceedings in the matter *sub judice.*

Accordingly, this matter is hereby RE-MANDED to allow appellant to proceed with his facially valid claim under § 1983.