**R.S.S.W., INC., d/b/a/ Goose Island Brewery, a Michigan corporation, and Richard Skinner, Plaintiffs,**

v.

**CITY OF KEEGO HARBOR, a Michigan municipal corporation, Michael Steklac, its City Manager, Jack Beach, its Chief of Police, its City Council Members Ralph Behler, Robert Burns, Arthur Nance, and David Hofmann, Defendants.**

No. 98–70497.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 16, 1998.

As Amended Sept. 23, 1998.

---

Hugh M. Davis, Jr., Detroit, MI, Robert D. Horvath, Troy, MI, for Plaintiffs.

James E. Tamm and D. Kevin Davis, Bloomfield Hills, MI, Thomas Ryan, Sylvan Lake, MI, for Defendants.

1. The original Complaint, filed February 4, 1998, also named the Michigan Liquor Control Commission ("MLCC") and its chairperson as Defendants. However, Plaintiffs subsequently dismissed those two Defendants from the Complaint. The Amended Complaint was then filed upon the request of the Court, in order to clarify the issues remaining.

## MEMORANDUM OPINION & ORDER

GILMORE, District Judge.

### I.

The present action is brought by R.S.S.W., Inc., a closely held corporation doing business as Goose Island Brewery ("Goose Island"), and its sole shareholder Richard Skinner ("Skinner") (jointly, "Plaintiffs"). The Amended Complaint, filed May 1, 1998, names as Defendants the City of Keego Harbor ("City" or "Keego Harbor") and the purported "authorized decisionmakers" for the City.[1] These decisionmakers include City Manager Michael Steklac ("Steklac"), Chief of Police Jack Beach ("Beach"), and City Council Members Ralph Behler ("Behler"), Robert Burns ("Burns"), Arthur Nance ("Nance"), and David Hofmann ("Hofmann"). These persons are sued in both their individual and official capacities.

### II.

The parties are now before the Court on Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment.[2] As discovery has yet to be completed in this case, Defendants' Motion for Summary Judgment is premature. The Court thus denies Defendants' Motion for Summary Judgment out of hand and addresses only the Motion to Dismiss.

Defendants' Motion to Dismiss arises under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). Rule 12(b)(6) provides that

> [e]very defense, in law or fact, to a claim for relief in any pleading ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses at the option of the pleader may be made by motion: ... (6) failure to state a claim upon which relief may be granted.

The Sixth Circuit has often discussed how a trial court is to review a Rule 12(b)(6)

2. This Motion was filed on March 10, 1998, and amended on May 15, 1998. Again, the amendments were submitted upon the request of the Court following the voluntary dismissal of the MLCC and its chairperson, in order to clarify the issues remaining.

motion. It states that a trial court "must construe the complaint liberally in the plaintiff[s'] favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir.1994); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir.1995). Because a Rule 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of the witnesses." *Miller*, 50 F.3d at 377. As put by the Supreme Court,

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence[,] its task is necessarily a limited one. The issue is not whether [the] plaintiff[s] will ultimately prevail but whether the plaintiff[s are] entitled to offer evidence to support the[ir] claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (*quoted in Miller*, 50 F.3d at 377). Thus, the court should deny a Rule 12(b)(6) motion " 'unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.' " *Gazette*, 41 F.3d at 1064 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Miller*, 50 F.3d at 377; *Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir.), *cert. denied*, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 495 (1994). "While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). Rather, the complaint " 'must contain either direct or inferential allegations respecting all the material elements to sustain a recovery

under *some* viable legal theory.' " *Id.* at 1240 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

**III.**

In compliance with the foregoing standard of review, the Court will not consider evidence outside of the pleadings, nor will it entertain Defendants' challenges to Plaintiffs' factual assertions. Rather, at this juncture, the Court will accept as true all factual allegations and permissible inferences in the Amended Complaint. *Gazette*, 41 F.3d at 1064. Those facts are as follows:

Goose Island is a "brewpub"[3] located in Keego Harbor, Michigan. At the time that Goose Island opened for business in 1995, it acquired a Class "C" liquor license from the predecessor establishment.[4] It then applied, in its own stead and with the City's approval,[5] for its own licenses. It was granted the following licenses on October 30, 1995:(i) a class "C" liquor license; (ii) a Sunday sales permit; (iii) an "official" (food) permit; (iv) a dance permit; and (v) a "SDM" license. Approximately seventeen months later, on March 25, 1997, Goose Island was also granted its "brewpub" license. Under state law, all such licenses must be renewed each year as of May 1st. Goose Island's licenses have been renewed each year since 1995 and are currently in full force and effect.

Since its opening, Goose Island has served food and alcohol until 2:00 a.m., as allegedly permitted under the rules and regulations of the MLCC (specifically, R436.1403). However, Defendants, in their efforts to promote Keego Harbor as a family-oriented summer recreational destination, have pressured Goose Island to set a closing time of 11:00 p.m.[6] Cognizant that they have no authority

**3.** A "brewpub" serves alcohol and food and is typically distinguished by the fact that, aside from the usual selection of alcohol, it also serves beer brewed on the premises. As such, brewpubs are also commonly referred to as "microbreweries."

**4.** Plaintiffs report that there has been a liquor-licensed establishment at the site of Goose Island since at least 1956.

**5.** Plaintiffs state that under the applicable state law, M.C.L.A. § 436.17(3), the applicable munici-

pality must give its approval for the issuance of a liquor license before the MLCC will issue a license to an applicant.

**6.** Keego Harbor is located close to Cass Lake, Sylvan Lake, and the Clinton River. The City occupies six-tenths of a square mile and has only about 3,000 residents. In this small town, there are approximately nine establishments with liquor licenses. Plaintiffs report that Keego Harbor filed a nuisance abatement suit against one of those establishments, Schoopers, in order to force it to set a closing time of 11 p.m.

to require an earlier closing time, Defendants have declined to make a formal request that Goose Island set a closing time of 11:00 p.m. Rather, they set out on an unlawful campaign of harassment intended to force Goose Island into submission. That campaign had four main components.

First, Defendants pursued their goal by means of "inordinate police scrutiny." For example, the City police drove through the Goose Island parking lot on a daily basis, parked within the near-vicinity of the building, and stopped and sometimes ticketed employees and customers as they left the brewpub. Defendants also enlisted the police departments of neighboring cities to assist them in this effort. The alleged scrutiny is to blame for a down-turn in business. Goose Island's sales receipts were only $31,000 in January 1998, as compared to $91,000 in January 1997.

Second, Defendants passed a City liquor license ordinance ("Liquor Ordinance") in order to advance their illegal objective. The Liquor Ordinance lists the criteria upon which the City will recommend non-renewal or revocation of a liquor license to the MLCC. It reads in relevant part as follows:

> The City Council may recommend non-renewal or revocation of a license or permit to the [MLCC] upon a determination based upon a preponderance of the evidence at [a] hearing that any of the following exist:
>
> Violations of State laws or local ordinances concerning the licensed premises including, but not limited to, any of the following:

> . . .

> (b) A pattern of patron conduct in the neighborhood of the licensed premises which is in violation of the law and/or disturbs the peace . . . and tranquility of the neighborhood;

> . . .

> (d) Entertainment on the premises or activity in connection with the licensed premises which by its nature causes, creates, or contributes to disorder, disobedience to rules, ordinances or laws, or contributes to the disruption of normal activity of those in the neighborhood of the licenses premises; and

> (e) Any advertising, promotion or activity in connection with the licensed premises which by its nature causes, creates, or contributes to the disruption of normal activity of those in the neighborhood of the licensed premises.

Plaintiffs contend that these criteria are overly broad and subjective. Furthermore, they claim that the City Council intended that they be so, as the Ordinance was created as a tool with which seek the revocation of the liquor license of any local establishment that refuses to set the desired 11:00 p.m. closing time.

Third, Defendants have pursued their goal through abuse of the City zoning authority. For example, the City informed Skinner that a zoning variance would not be required for a particular construction project on Goose Island's south property line.[7] However, after

---

7. Specifically, Plaintiffs present the facts as follows:

[O]n, or about, January 18, 1996, [Goose Island] requested . . . two (2) variances regarding [its] property, namely, one sideyard setback variance from its west property line and one sideyard setback variance from its south property line. . . . Plaintiff was then [erroneously] advised by agents and/or employees of the City that no south sideyard setback variance was required for its planned construction. . . . Plaintiff, based upon and in reliance on said communications, did not pursue the request for the south sideyard setback and commenced construction. [The City then] granted the remaining request for a setback variance from the rear, or west, property line.

[T]he City building official and other employees and/or agents of the City were present on the construction site daily while the storage area on the south side of [Goose Island] building was constructed [and] at no time during said open and obvious construction did any City official, agent and/or employee indicate that said construction was improper or in violation of any zoning ordinance. [The south sideyard setback is necessary because] additional storage area is required by the Oakland County Department of Public Health for the continued operation of [Goose Island] as a full service restaurant enterprise.

[T]he new area so constructed is now claimed by the City to be in violation of the sideyard setback requirements of the City's zoning ordi-

the construction project was completed, City reversed itself and told Skinner that a variance would in fact be required. Steklac then informed Skinner that the required variance would be granted only if Goose Island would begin to "voluntarily" close each day by 11 p.m. When Goose Island refused to comply, the zoning variance was denied.[8] The City also refused to even consider a subsequent request by Goose Island to change the name of and the sign-face on the brewpub. Specifically, Steklac stated in a November 21, 1997, letter, that "since there are a number of site plan and use issues to be resolved at the Goose Island Brewery, the issue of the sign-face replacement should properly be part of those overall discussions."

Fourth and finally, Defendants harassed Goose Island by lodging an unjustified complaint with the MLCC regarding a customer incident. Specifically, the City lodged a complaint with the MLCC after Goose Island called the City police for assistance with an inebriated customer. Plaintiffs argue that that action was inappropriate given that Goose Island itself brought the customer's condition to the City's attention.

Plaintiffs claim that Defendants, and particularly Steklac, actually threatened to seek the revocation of Goose Island's liquor license. However, Goose Island's license was in fact renewed on May 1, 1998, without objection by the City. As such, the alleged threats have not been carried out. Nevertheless, Plaintiffs stress that the zoning dispute, the sign-face dispute, and the customer incident subject it to potential revocation under the broad criteria of the Liquor Ordinance.

Goose Island closed its doors to business on February 7, 1998, after the original Complaint was filed. In addition, Plaintiffs put Goose Island up for sale. They claim that both actions were necessitated by Goose Island's recent poor performance, which they allege to be the result of Defendants' campaign of harassment. Plaintiffs report that they have received no offers to purchase the brewpub and that they "plan to re-open [the brew-pub] on the notion that the pressure has now relented."

Based on the foregoing facts, Plaintiffs state the following causes of action pursuant to 42 U.S.C. § 1983:

The selective police action to which Plaintiffs have been subjected by Keego Harbor violates equal protection of the laws since its objective is a forbidden one, namely, the divestment of Plaintiffs' licenses/permits, property rights, and fundamental rights to conduct business. Further, the police actions directed against Plaintiffs violate procedural due process since they, effectively, work a revocation of Plaintiffs' operating licenses on a *de facto* basis without any hearing. Further, the administrative denial, or outright refusal to consider for administrative action by Keego Harbor impermissibly links government benefits/procedures in violation of the doctrine of unconstitutional conditions or is in violation of procedural due process, which requires disinterested decision-making based on the merits of a particular dispute, as opposed to political pressure, bias, or hostility. Further, the Due Process Clause protects an individual from the arbitrary exercise of governmental powers, such as are the actions of Keego Harbor that have been directed against Plaintiffs. And, to the degree Keego Harbor's police and administrative actions are in retaliation for Plaintiffs' refusal to close at 11:00 p.m. and for Plaintiffs' concomitant recourse to their administrative and/or judicial remedies, Keego Harbor's actions otherwise violate the Fourteenth and First Amendments since they have taken place because Plaintiffs have chosen to defend their legal rights by pursuing their available legal remedies.

---

nance. [O]n or about April 17, 1997, [Goose Island] applied for a variance for the existing construction claimed to be in violation of side-yard setback on the south side. [O]n or about July 14, 1997, the [BZA] denied [Goose Island's] variance request....

**8.** This decision was upheld by the City's Board of Zoning Appeals ("BZA"). On September 2,

1997, Goose Island filed an appeal of the BZA's decision in Oakland County Circuit Court. *See* note 10, *infra*. Plaintiffs allege that the subsequent harassment was in part in retaliation for the filing of that appeal.

As such, it appears that Plaintiffs state claims for denial of due process and equal protection under the Fourteenth Amendment, for denial of free speech under the First Amendment, and for violation of the doctrine of unconstitutional conditions. They seek monetary damages, as well as declaratory and injunctive relief.[9]

## IV.

■ The Court first addresses Defendants' general argument that this case must be dismissed in its entirety on the ground that Plaintiffs failed to exhaust their state administrative remedies. This argument is without merit.

■ First, in the present case, Plaintiffs do not seek a substantive review of the zoning decisions of the City. Rather, they seek a finding of fact that those decisions were rendered not on the merits but to advance the campaign of harassment against Goose Island. In other words, Plaintiffs argue that the zoning decisions are without substance, regardless of how they may appear on the surface.

Second, even if Plaintiffs were seeking a substantive review of the zoning decisions, their case would not be barred. It is now well established that a plaintiff asserting a § 1983 action "need not exhaust state administrative remedies before bringing an action in federal court [or] attempt to vindicate his or her claim in state court before asserting it in federal court." *Wilkerson v. Johnson,* 699 F.2d 325, 329 (6th Cir.1983) (citing *Patsy v. Board of Regents of Florida,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)).

The Court notes that this legal proposition is in fact clearly stated in *Williamson Coun-*

*ty Regional Planning Commission v. Hamilton Bank of Johnson City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the very case on which Defendants rely. In *Williamson,* the Court clarified that the issue before it was whether the administrative decision under review was a "final" decision, not the "conceptually distinct" issue of whether administrative remedies must be exhausted before judicial review may be sought. *Id.* at 192, 105 S.Ct. 3108. In so doing, it clearly reaffirmed the holding of *Patsy, supra,* that "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action." *Id.* at 192–93. As such, it is clear that Plaintiffs need not exhaust administrative remedies before advancing their claims in this Court.

## V.

Plaintiffs state several causes of action under 42 U.S.C. § 1983. Section 1983 provides in relevant part that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

To succeed on a cause of action under § 1983, a plaintiff must establish that: (1) he was deprived of a right secured by the federal Constitution or laws of the United States; (2) the deprivation was caused by a person acting under color of state law; and (3) the deprivation occurred without due process of

9. Plaintiffs also filed two actions against the City in Oakland County Circuit Court. The first, filed September 2, 1997, is the appeal of the decision of the BZA regarding the variance request for the south-side setback. *See* note 9, *supra.* The second, filed January 6, 1998, is an action for declaratory relief. The second case expressly states that it states no claims under the U.S. Constitution or federal law.

The fact of the two state cases does not affect the jurisdiction of this Court over the present

case. The Supreme Court has held that, while "[i]t is true, of course, that the federal court's disposition of ... a case [such as the present one] may well affect, or for practical purposes pre-empt, ... a pending ... state court action, ... there is no doctrine that the ... pendency of state judicial proceedings excludes the federal courts." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 373, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989).

law. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir.1994).

In the present case, there is no dispute that Defendants acted under color of state law. Indeed, Plaintiffs allege that the tools of the harassment employed by Defendants—police scrutiny, zoning decisions, legislative acts, and threats of license revocation—were available to them solely by virtue of their municipal authority. Rather, the dispute between the parties is whether the facts alleged by Plaintiffs are sufficient to support any one of their constitutional claims. Each of those claims now is examined in turn.

## A.

In the parlance of constitutional law, Plaintiffs contend that their right to operate the brewpub in accordance with the laws of Michigan—and thereby to pursue their chosen occupation—is a "liberty interest" protected under the Fourteenth Amendment. Indeed, it is well established that the " 'freedom to choose and pursue a career, "to engage in any of the common occupations of life," qualifies as a liberty interest which may not be arbitrarily denied by the State.' " *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and *Wilkerson*, 699 F.2d at 328). Plaintiffs claim that the facts they allege are sufficient to state a Fourteenth Amendment claim for denial of their liberty interest with due process of law, and they argue that the viability of that claim is well supported by the case law of the Sixth Circuit. The Court agrees.

The Court takes particular notice of two cases from the Sixth Circuit. The first of these cases is *Wilkerson, supra*. In *Wilkerson*, the plaintiffs alleged that certain members of the state Board of Barber Examiners intentionally misapplied state law to prevent them from obtaining a barber's license. The Sixth Circuit, relying on *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), found that such action amounted to "harassment and delay in allowing [the] plaintiffs to pursue their occupation." 699 F.2d at 328. It then held that such harassment and delay, if proven, would

constitute a due process violation of the plaintiffs' liberty interest in the pursuit of that occupation. *Id.*

The second case of note is *Sanderson v. Village of Greenhills*, 726 F.2d 284 (6th Cir. 1984). In *Sanderson*, the plaintiff was informed only hours after opening a billiards parlor that he would require an "amusement device" permit to operate the parlor. *Id.* at 285. However, he was also informed that, due to a distaste for billiards in the municipality, the permit would be denied. *Id.* After successfully challenging the applicability of the amusement device ordinance to billiards tables, the plaintiff sought damages under § 1983. The Sixth Circuit found that the plaintiff stated a claim for deprivation of his liberty interest to engage in "whatever legal business he elects to pursue." *Id.* at 286–87. It held that such interference with the plaintiff's business, based on the fact that municipal officials "simply did not desire a billiard parlor," was arbitrary and therefore unconstitutional. *Id.* at 287.

The Court is also cognizant of a case from the Ninth Circuit with striking similarity to the present case. *Benigni v. City of Hemet*, 879 F.2d 473 (9th Cir.1988). In *Benigni*, the plaintiff operated a restaurant and bar. He alleged that the municipality desired to force him out of business due to his Italian ancestry and alleged connection to organized crime. Specifically, the plaintiff alleged that the municipality embarked on a campaign of harassment similar to that alleged in this case. For example, he claimed that municipal police officers "perform[ed] bar checks on a daily basis; ... follow[ed] customers leaving the [establishment] and occasionally arrest[ed] them; [and] park[ed] across the street and 'stak[ed] out' his customers, employees, and family members." *Id.* at 475. The court found that such allegations were sufficient to state a cause of action for deprivation of a liberty interest. It stated that "the constitutional right infringed in this case is the right to pursue an occupation." *Id.* at 478.

The foregoing cases—*Wilkerson, Sanderson,* and *Benigni*—demonstrate that a Fourteenth Amendment claim for deprivation of a liberty interest without due process will lie

where the plaintiff alleges that municipal actors, acting under color of state law, intentionally harassed and arbitrarily interfered with his right to conduct his chosen profession within the parameters of the law. Here, Plaintiffs allege that Keego Harbor and certain municipal actors interfered with their right to operate Goose Island until 2:00 a.m., as permitted under state law. Furthermore, they claim that the campaign of harassment has been conducted primarily through abuse of the municipal authority and police power and, thus, under color of state law. As such, it is clear that Plaintiffs have presented facts that support their due process claim.[10] Furthermore, even were this outcome less clear, dismissal would nevertheless be inappropriate, as Defendants failed entirely to address the foregoing authority.

Given the finding that Plaintiffs have stated a cause of action for deprivation of a liberty interest, the Court need not reach the argument that the same facts state a claim for deprivation of a property interest. *See Wilkerson,* 699 F.2d at 328 (finding property interest question to be moot in wake of finding of liberty interest). However, the Court notes that this claim appears to be premature, as Plaintiffs have not as yet been divested of or otherwise abandoned their various licenses. *See Reed v. Village of Shorewood,* 704 F.2d 943, 949 (7th Cir.1983) ("[I]f it is true ... that through harassment of customers and employees ... the defendants destroyed the value of the plaintiffs' licensed business and forced them ultimately to *give up* their [liquor] license, the plaintiffs were deprived of their property right in the license even though the license was never actually revoked.") (emphasis added).

**B.**

Plaintiffs bring a second cause of action under the Fourteenth Amendment, for denial of equal protection of the law. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.,* 473 U.S.

432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). However, it merely "guarantees equal laws, not equal results." *Personnel Adm'r v. Feeney,* 442 U.S. 256, 273, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). Plaintiffs' equal protection claim in the present case is founded upon their allegations that Defendants selectively enforced the law—both the zoning and traffic laws—in order to discriminate against them.

The Second Circuit has noted that selective enforcement is "a 'murky corner of equal protection law in which there are surprisingly few cases.'" *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995) (quoting *LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)). To prevail on such a claim, a plaintiff must show that

(1) [he], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*Zahra,* 48 F.3d at 683 (quoting *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992); *see also LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994); *Stemler v. City of Florence,* 126 F.3d 856, 873 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1796, 140 L.Ed.2d 936 (1998)) (establishing substantively identical elements of a claim for selective prosecution). As such, "[t]o prevail on an equal protection claim that a facially neutral statute is being applied unequally, 'intentional or purposeful discrimination' must be shown." *Jones v. White,* 992 F.2d 1548, 1573 (11th Cir.), *cert. denied,* 510 U.S. 967, 114 S.Ct. 448, 126 L.Ed.2d 381 (1993) (quoting *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944)). In other words, the decisionmaker must have "selected a course

---

**10.** The Court notes that the facts that support Plaintiffs' due process claim include the *passage* of the Liquor Ordinance, as Plaintiffs allege that Ordinance was created as tool to force compliance with the desired 11:00 p.m. closing time. Whether Plaintiffs may also challenge the *substance* of that Ordinance under the First Amendment is addressed in Section V(C), *supra.*

of action *'because of'* its detrimental effects on an identifiable group." *Jones,* 992 F.2d at 1573 (quoting *Wayte v. United States,* 470 U.S. 598, 610, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). In the present case, Plaintiffs claim that the zoning laws and traffic laws were enforced against them to both punish and inhibit the exercise of their protected liberty interest in operating Goose Island within the parameters of the law.

■ First, the Court finds that Plaintiffs have not properly stated an equal protection claim with regard to the enforcement of the zoning laws. Again, to state such a claim, Plaintiffs must allege that they were, *"as compared with others similarly situated,"* selectively treated. *Zahra,* 48 F.3d at 683 (emphasis added); *see also Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 61 (2d Cir.1985) (dismissing an equal protection claim due to the absence of "the essential allegation that others were treated differently."). No such allegation has been made.

Furthermore, as previously stated, Plaintiffs claim the City failed to consider the merits of their zoning variance application. As such, their allegations are not in fact of selective enforcement, but rather of denial of due process. As such, this equal protection claim appears to be an attempt by Plaintiffs to dress their equal protection claim in new dressing. This court agrees that a "claim of denial of equal protection may not be merely another way of stating what has already been put forward as a claim of denial of due process." *Yale Auto Parts, Inc. v. Johnson,* 593 F.Supp. 329, 333 (D.Conn.1984), *aff'd,* 758 F.2d 54 (2d Cir.1985) (quoting *Francini v. Town of Farmington,* 557 F.Supp. 151, 157–58 (D.Conn.1982)).

■ The Court also finds that Plaintiffs have not properly stated an equal protection claim with regard to the enforcement of the traffic laws. To survive, such a claim requires allegations of actual enforcement of the traffic laws. However, Plaintiffs make only vague reference to actual enforcement. Rather, their allegations are of mere traffic stops and of a increased police presence. As such, the Court again must find that these allegations, while relevant to Plaintiffs' claim for denial of due process, do not suffice to

state an independent claim for selective enforcement.

■ In addition, the Court agrees that Plaintiffs do not have standing to assert this claim, as the alleged scrutiny was brought to bear not upon them, but upon their customers and employees. Furthermore, Plaintiffs lack *jus tertii* standing to bring this claim on behalf of those parties, absent a showing that those parties are hindered in their ability to protect their own interests. *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 295 (6th Cir.1998).

### C.

Plaintiffs also bring a claim under the First Amendment. There are three distinct parts to this claim. The Court addresses each in turn.

■ First, Plaintiffs argue that to the extent that the alleged campaign of harassment was in retaliation for their filing of an appeal of the City's zoning decision, Defendants violated their First Amendment rights. The Court agrees. As pointed out by Plaintiffs, it is well established that "[t]he right to petition the government for redress of grievances is grounded in the [F]irst [A]mendment, and generally includes the right of every citizen to access to the courts." *Gillard v. Norris,* 857 F.2d 1095, 1101 (6th Cir.1988). Furthermore, "[R]etaliation by public officials against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo,* 34 F.3d 359, 364 (6th Cir.1994), *cert. denied,* 514 U.S. 1036, 115 S.Ct. 1400, 131 L.Ed.2d 288 (1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 1400, 131 L.Ed.2d 288 (1995).

■ Second, Plaintiffs raise a facial challenge to the Liquor Ordinance under the First Amendment. Although it is not fully clear to the Court, it appears that Plaintiffs claim that the Ordinance, due to its overbreadth, works as a prior restraint on their activities. Defendants do not at this time challenge the substance of this claim, but argue only that Plaintiffs lack standing to bring this claim. Alternatively, Defendants contend that this claim is not ripe for review,

given that the City has taken no action to seek non-renewal or revocation of Goose Island's licenses.

The Court finds that Plaintiffs' challenge to the Liquor Ordinance is justiciable. While it is indeed undisputed that the City has taken no steps to seek non-renewal or revocation of Plaintiffs' licenses, Plaintiffs have alleged threats to take such steps. In addition, Plaintiffs' allegations, if true, demonstrate that the City has created a record of zoning violations and patron misconduct with which, under the criteria of the Liquor Ordinance, it may seek revocation of Goose Island's license. Thus, the reasoning of the court in *G & V Lounge, Inc. v. MLCC*, 23 F.3d 1071, 1075 (6th Cir.1994), is fully applicable here: "Plaintiff[s] do[ ] not have to wait until [their liquor] license is revoked to have standing to challenge the allegedly overbroad licensing scheme that would allow its revocation."

Third and finally, Plaintiffs raise a facial challenge to the City sign ordinance ("Sign Ordinance") under the First Amendment. Unlike the challenge to the Liquor Ordinance, the challenge to the Sign Ordinance is not properly a part of this case. While the City has allegedly threatened to apply the Liquor Ordinance to Plaintiffs' detriment, the same is not true of the Sign Ordinance. Plaintiffs' request to replace its sign-face was not denied, or threatened to be denied, but postponed pending resolution of the zoning disputes. Furthermore, Plaintiffs do not challenge the legal right of the City to postpone its decision in this manner.[11] Rather, they allege that the postponement was not put into effect for the reasons proffered but to advance the campaign of harassment. Thus, while these allegations are fully relevant to Plaintiffs' Fourteenth Amendment due process claim, there is simply no case or controversy at hand that gives this Court jurisdiction to undertake a facial review of

the Sign Ordinance under the First Amendment. *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 127 (6th Cir.1995).

In short, Plaintiffs may assert a cause of action under the First Amendment (i) on the grounds that they were subjected to retaliation for appealing the City's zoning decisions; and (ii) in order to challenge the Liquor Ordinance on its face. However, the Court dismisses that claim insofar as it challenges the Sign Ordinance.

**D.**

▮▮▮ Finally, Plaintiffs raise a claim under the doctrine of unconstitutional conditions. This doctrine provides that "a state actor cannot ... condition the receipt of a benefit, such as a ... license or ... permit, on an agreement to refrain from exercising one's constitutional rights." *G & V Lounge*, 23 F.3d at 1077; *see also Woodard v. Ohio Parole Authority*, 107 F.3d 1178, 1189 (6th Cir.1997), *rev'd on other grounds*, —— U.S. ——, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998). Plaintiffs claim that Defendants have conditioned the issuance of a zoning permit on an agreement by Plaintiffs to set a closing time of 11:00 p.m. for Goose Island. As such, they claim that Defendants have conditioned the receipt of a permit on an agreement from Plaintiffs to refrain from pursuing their chosen occupation within the parameters of state law.

In their Motion to Dismiss, Defendants do not address the merits of Plaintiffs' claim under the doctrine of unconstitutional conditions. For that reason, the Court has no basis to address the viability of or otherwise to dismiss that claim.

**VI.**

▮▮▮▮ Finally, the Court turns to the claims of immunity raised by the individual Defendants.[12] In so doing, it rejects Plain-

---

11. As such, *Christy v. Randlett*, 932 F.2d 502 (6th Cir.1991), is inapposite.

12. There is no dispute as to whether Plaintiffs have properly named the City as a Defendant in this case. It is firmly established that a § 1983 claim will lie as against a municipality when the plaintiffs allege that a constitutional violation arises out of an official policy or established

custom of the municipality. *Adkins v. Board of Educ.*, 982 F.2d 952, 957 (6th Cir.1993); *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir.1991); *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 515 (6th Cir.), *cert. denied*, 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991). In the present case, Plaintiffs have clearly alleged such an official policy or

tiffs' argument that a ruling on those claims of immunity must await the close of discovery. It is well settled that immunity is a "threshold" question, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (quoted in *Veney v. Hogan,* 70 F.3d 917, 920 (6th Cir.1995)). More to the point, the Supreme Court held in *Harlow* that until that question is addressed, "discovery should not be allowed." 457 U.S. at 818, 102 S.Ct. 2727. Indeed, to defer determination of this issue until the close of discovery would be to deny the possibility of an "early exit from [the] lawsuit" and the escape from the "burdens of litigation" that is the very purpose of immunity. *Veney,* 70 F.3d at 922, 920 (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

### A.

The Court agrees with Defendants that the individual City Council Members—Behler, Burns, Nance, and Hofmann—are entitled to absolute legislative immunity.

■ The Sixth Circuit held in *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (1989), that local legislators, like state and federal legislators, are protected by absolute immunity "when they act in their legislative capacities." Therefore, the key issue with regard to claims of absolute immunity is whether the legislator was indeed acting in a legislative capacity.

Here, each City Council Member is alleged only to have participated in the passage of various ordinances. No allegations are made as to the conduct of any single member. Clearly, the acts Plaintiffs complain of are ultimately legislative acts and each City Council Member is entitled to legislative immunity. Plaintiffs cannot avoid this result by raising vague allegations that those legislative acts were a mere "formalization" of non-legislative back-room discussions. Such claims, unaccompanied by specific allegations regarding any one person, have been flatly rejected by the Sixth Circuit. For example, in *Veney,* the court dismissed the claims

against the individual defendants upon the following reasoning:

> [T]he complaint does not allege wrongdoing by any *particular* defendant. It is this sort of inchoate, generalized form of pleading that fails to convey to the district court the information it needs to determine whether a defendant is entitled to ... immunity. Clearly, if the affirmative defense of ... immunity is to fulfill its purpose of protecting public officials from litigating baseless claims, plaintiff[s'] pleading falls far short of the standard that is necessary to weed out meritless claims.

70 F.3d at 922 (emphasis added). In accordance with *Veney,* this Court finds that the City Council Members are entitled to immunity and dismisses each of them from this case.

### B.

■ By contrast, the Court finds that Defendants Steklac and Beach are not entitled to immunity. The Sixth Circuit addressed the issue of qualified immunity of government officials in *Barber v. City of Salem, Ohio* as follows:

> A government official performing a discretionary function is entitled to qualified immunity in his personal capacity where the official's action (or failure to act) does not violate constitutional standards in light of clearly established law at the time the official acted. However, the right in question must be more than simply a generalized right. Rather, as this court [has] explained,
>
> > It must be clearly established in a "particularized" sense, so that "the contours of the right" are clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that right. This particularity requirement does not mean that the very action in question has been held unlawful; it does mean, though, that in light of the preexisting law, the illegality of the action must be apparent.

953 F.2d 232, 236 (6th Cir.1992) (citations omitted). Echoing the Sixth Circuit, this

---

custom. In short, Plaintiffs allege that the City has an established—and unconstitutional—policy of pressuring its liquor-licensed establishments,

through abuses of municipal power, to relinquish their right to operate until 2:00 a.m.

Court emphasized in *Oswald v. Graves* that "[t]he right allegedly violated must ... be clearly established in a much more particularized sense than a broad constitutional right." 819 F.Supp. 680, 684 (E.D.Mich. 1993). However, the standard of qualified immunity "depends substantially upon the level of generality at which the relevant 'legal' rule is to be identified." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

The first step in a qualified immunity analysis is to determine whether, based on the applicable law, a constitutional violation has occurred. *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir.1996). If the court finds a constitutional violation, it then must determine whether it involved clearly established constitutional rights of which a reasonable person would have known. *Id.* at 1158. In order that this determination is possible, the Sixth Circuit held that "[o]nce the issue of qualified immunity is properly injected in the case by ... a motion to dismiss ..., the plaintiff is obliged to present facts which if true would constitute a violation of clearly established [federal] law." *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987).

This Court held in Section V(A), *supra*, that the alleged campaign of harassment, if proven, clearly constitutes a denial of due process under the Fourteenth Amendment. Plaintiffs allege specific acts in the alleged campaign of harassment that Steklac and Beach, unlike the City Council members, are alleged to have carried out. Beach is alleged to have orchestrated the police scrutiny. Steklac is alleged to have postponed consideration of the sign-face application and to have informed Plaintiffs that they can solve their problems with the City by closing Goose Island at 11:00 p.m. As such, the Complaint alleges that Steklac and Beach engaged in conduct that constitutes violations of the clearly established right to pursue one's chosen occupation.

However, Steklac and Beach shall each be named in his individual capacity only. A suit against a municipality's official in his *official* capacity is in effect a suit against the municipality, *not* against the named official. As the

Sixth Circuit held in *Littlejohn v. Rose*, "[A]ctions against parties in their official capacities are, essentially, actions against the entities for which the officers are agents." 768 F.2d 765, 772 (6th Cir.1985), *cert. denied*, 475 U.S. 1045, 106 S.Ct. 1260, 89 L.Ed.2d 570 (1986). In like manner, the Supreme Court has held that official capacity suits " 'represent only another way of pleading an action against the entity of which [the] officer is an agent' " and that, as such, "there is no ... need to bring official-capacity actions against local government officials [because] ... local government units can be sued directly." *Kentucky v. Graham*, 473 U.S. 159, 165, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)) (quoted in *Bush v. Rauch*, 38 F.3d 842, 849 (6th Cir.1994)). Thus, so far as Steklac and Beach are named in their official capacities, those claims are dismissed as duplicative of the claims against the municipality.

## VII.

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss. Specifically, the Motion is **DENIED** insofar as it seeks dismissal of Plaintiffs' (1) Fourteenth Amendment due process claim; (2) First Amendment challenge to the Liquor Ordinance; (3) First Amendment claim of retaliation; and (4) claim under the doctrine of unconstitutional conditions. The Motion is **GRANTED** insofar as it seeks dismissal of Plaintiffs' (1) Fourteenth Amendment equal protection claim and (2) First Amendment challenge to the Sign Ordinance. In addition the Court **DISMISSES** Defendants Behler, Burns, Nance, and Hofmann from the case on the grounds of legislative immunity. Defendants Steklac and Beach are not dismissed from the case but may be named in their individual capacities **ONLY.**

All requests for costs and fees are **DENIED.**

**IT IS SO ORDERED.**