126

Kimberly A. MIYAZAWA,
Plaintiff–Appellant,

v.

CITY OF CINCINNATI; Councilmember Tyrone Yates; Councilmember Bobbie Sterne; Councilmember Nick Vehr; Councilmember David Mann; Councilmember Peter Strauss; Councilmember Nell Serber; Councilmember Roxanne Qualls; Councilmember John Mirlisena; Mayor Dwight Tillery; Don Driehause; George Eyrich; Ralph Kohnen; Thomas Luken and Hamilton County Board of Elections, Defendants–Appellees.

No. 93–3649.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 10, 1994.

Decided Jan. 23, 1995.

Eric H. Kearney (argued and briefed), Strauss & Troy, Cincinnati, OH, for plaintiff-appellant.

Julie F. Bissinger (argued and briefed), City Solicitor's Office, Philip L. Zorn, Jr., Cincinnati, OH, for defendants-appellees.

Before: BROWN, KENNEDY, and SILER, Circuit Judges.

SILER, Circuit Judge.

Plaintiff Kimberly A. Miyazawa appeals the decision of the district court granting summary judgment in favor of the defendant, City of Cincinnati, 825 F.Supp. 816. Miyazawa contends that the district court erred when it held that she did not have standing to challenge the amendment to the city charter restricting term limits for council members and used improper criteria in determining that the amendment did not unconstitutionally interfere with or burden Miyazawa's First and Fourteenth Amendment rights. For the reasons stated herein, we affirm the decision of the district court.

## I.

On November 15, 1991, two amendments (Issue 4 and Issue 5) to the City of Cincinnati Charter appeared on the general election ballot. Issue 4 was a measure opposing term limitations for members of the Cincinnati City Council. Issue 5 was an amendment which imposed term limitations upon Cincinnati City Council members. Both Issue 4 and Issue 5 received a majority of votes. On December 4, 1991, the City Solicitor issued an opinion holding that although both Issues passed by a majority of affirmative votes, Issue 5 would take effect because it received the most votes. The effect of Issue 5 is to limit a member of the council to four consecutive two-year terms.

In 1992, Miyazawa, a registered voter in Cincinnati, filed this declaratory action asking the court to declare Issue 5 unconstitutional as violating her First and Fourteenth Amendment rights. The district court granted summary judgment for the defendants

finding that Miyazawa lacked standing to challenge the amendment and that the amendment was constitutional under the First and Fourteenth Amendments of the United States Constitution.

## II.

Review of a district court's grant of summary judgment is de novo. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). As the parties stipulated to the facts, they admit there are no factual disputes to resolve.

Article III of the United States Constitution provides that parties attempting to invoke federal jurisdiction must allege an actual case or controversy. *O'Shea v. Littleton*, 414 U.S. 488, 493–94, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Flast v. Cohen*, 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). Thus, it is a threshold requirement that a plaintiff allege she has "sustained or is immediately in danger of sustaining some direct injury as a result of its enforcement, and not merely that [s]he suffers in some indefinite way in common with people generally." *Massachusetts v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). Additionally, "[t]he injury ... must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675.

■ Voters' rights under the First and Fourteenth Amendments were defined in *Anderson v. Celebrezze*, 460 U.S. 780, 787, 103 S.Ct. 1564, 1569, 75 L.Ed.2d 547 (1983), as "'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters ... to cast their votes effectively.'" (quoting *Williams v. Rhodes*, 393 U.S. 23, 30–31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968)). Miyazawa is entitled to these rights, but she lacks standing because the threat of injury is neither real nor imme-

diate, but is hypothetical. As the plaintiff, she bears the burden of demonstrating that the government's regulation of another party causes her to lose a constitutional right. *See Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992). When she is not the object of the government action, standing is not impossible to prove, "but it is ordinarily 'substantially more difficult' to establish." *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 758, 104 S.Ct. 3315, 3328, 82 L.Ed.2d 556 (1984)). She has not demonstrated her standing here. *Cf. Jaimes v. Toledo Metropolitan Housing Authority*, 758 F.2d 1086, 1093 (6th Cir.1985). Given the ruling in *Jaimes*, Miyazawa's contention that she has standing through the "capable of repetition, yet evading review" ripeness doctrine, *see Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), is meritless.

Miyazawa contends that the ruling in *Zielasko v. State of Ohio*, 873 F.2d 957 (6th Cir.1989), is applicable here. However, we disagree. In that case, Judge Zielasko, who was more than seventy years of age, and Ms. Bowman, a voter who supported him, brought an action challenging the constitutionality of an Ohio constitutional provision precluding the election or appointment of any judicial officer over the age of seventy. The state argued that as Zielasko had not taken any action to promote his candidacy or to secure his place on the ballot, neither he nor Bowman had standing. We found that Zielasko had standing because had he personally promoted his candidacy, this would have caused him to run the risk of a criminal penalty for "election falsification," as he would have had to sign a document declaring he was under seventy years of age. Accordingly, the fear of some certain legal penalty may constitute an actual harm or injury sufficient to save a case from dismissal. Bowman's standing was recognized through Zielasko.

■ In this case, no such harm can be found. Miyazawa has merely asserted a general complaint that an unidentified candidate that she may want to vote for may not be eligible to run for that office. She has dem-

onstrated no close relationship to, or any personal stake in, the claim made. No one is guaranteed the right to vote for a specific individual. *Zielasko,* 873 F.2d at 961. Miyazawa has suffered no harm, nor will she suffer any greater harm than that of any other voter in the City of Cincinnati, that would provide her standing herein.

Miyazawa asserts that other cases have recognized a voter's standing to challenge statutes under which potential candidates were denied access to the ballot and that this circuit should follow suit. However, a review of these cases reveals that they are easily distinguishable from that at bar. For example, while the Supreme Court in *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972), allowed a suit by voters to challenge state ballot access requirements, the voters/plaintiffs were persons who were seeking to become candidates but were barred therefrom under the subject statute. In *Erum v. Cayetano,* 881 F.2d 689 (9th Cir. 1989), a voter was allowed to challenge a state ballot access requirement. In *Erum,* the plaintiff/voter was a non-partisan candidate who was seeking to become a candidate but was barred by the applicable statute.[1] Finally, in *Henderson v. Ft. Worth Independent School District,* 526 F.2d 286 (5th Cir. 1976), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979), a voter wishing to support a particular potential candidate was found to have standing to challenge a state statute ballot requirement.

While the general language of the opinions in these cases seems to support Miyazawa's position, a careful review reveals that in each case, the plaintiff/voter had a personal stake in the outcome of the election (i.e., the voter was a potential candidate, a supporter of the potential candidate, or was unable to vote for his specific candidate of choice due to the subject law), unlike Miyazawa, who only alleges that sometime in the future she may

want to vote for an unidentified candidate who may not meet the requirements of the subject legislation. Clearly, Miyazawa does not have a sufficient personal stake in the outcome to possess standing to bring this action.

As the effect of Issue 5 is not retroactive for persons who had already served four consecutive two-year terms when it went into effect, *see State ex rel. Mirlisena v. Hamilton Cty. Bd. of Elections,* 67 Ohio St.3d 597, 622 N.E.2d 329, 331 (1993), it would be difficult to identify a candidate presently who would be affected by this provision. Therefore, we need not issue an advisory opinion for a contingency that may never arise.

Given that we have found that Miyazawa lacks sufficient standing to bring this suit, we do not address the additional issues raised in this appeal.

**AFFIRMED.**

---

1. However, the Ninth Circuit did state in general terms that the plaintiff/voter possessed "standing to challenge the whole of section 12–41's ballot access restrictions in his capacity as a registered voter." *Erum,* 881 F.2d at 691 (citing *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). In *Baker,* voters who were affected by a state apportionment statute were allowed to

challenge the statute. The Court stated that "voters who allege facts showing disadvantage to themselves as individuals have standing to sue." 369 U.S. at 206, 82 S.Ct. at 704. Under this rationale, Miyazawa clearly does not have standing as she has alleged no specific facts evidencing a disadvantage to herself as an individual.