**R.S.S.W., INC., d/b/a Goose Island Brewery, and Richard Skinner, Plaintiffs,**

v.

**CITY OF KEEGO HARBOR, Michael Steklac, Jack Beach, Ralph Behler, Robert Burns, Arthur Nance, and David Hofmann, Defendants.**

**Civil Action No. 98–40377.**

United States District Court, E.D. Michigan, Southern Division.

June 28, 1999.

Robert D. Horvath, Troy, MI, Hugh M. Davis, Jr., Detroit, MI, for R.S.W.W., Incorporated, Richard Skinner.

James E. Tamm, O'Connor, DeGrazia, Bloomfield Hills, MI, Thomas J. Ryan, Sylvan Lake, MI, for City of Keego Harbor, Ralph Behler, Robert Burns, Arthur Nance, David Hofmann.

Nancy A. Piggush, State of Michigan, Office of Attorney General, Lansing, MI, Irene M. Mead, Michigan Department of Attorney General, Liquor Control Division, Lansing, MI, for Michigan Liquor Control Commission, Jacquelyn Stewart.

### OPINION AND ORDER DENYING PLAINTIFFS' CORRECTED MOTION FOR RECONSIDERATION

GADOLA, District Judge.

On October 1, 1998, plaintiffs R.S.S.W., Inc., d/b/a Goose Island Brewery and Richard Skinner filed a motion for reconsideration of the Honorable Horace W. Gilmore's September 16, 1998 memorandum opinion and order granting in part and denying in part defendants' motion to dismiss. *See R.S.S.W., Inc. v. City of Keego Harbor,* 18 F.Supp.2d 738 (E.D.Mich.1998) (Gilmore, J.). On October 6, 1998, plaintiffs filed a

corrected motion for reconsideration. The above-captioned case was reassigned to this Court on November 2, 1998. Pursuant to an order issued April 9, 1999, defendants filed a response to plaintiffs' corrected motion for reconsideration on April 19, 1999. On the same date, plaintiffs submitted a supplemental brief regarding the issue of legislative immunity in support of their motion for reconsideration. The supplemental brief is accompanied by Exhibits A through O.

For the reasons set forth below, the Court will deny plaintiffs' corrected motion for reconsideration of Judge Gilmore's September 16, 1998 memorandum opinion and order granting in part and denying in part defendants' motion to dismiss.

## I. LEGAL STANDARD

Pursuant to Local Rule 7.1(g)(3) (E.D.Mich. Sept. 8, 1998), the Court will not grant a motion for reconsideration unless "[t]he movant ... not only demonstrate[s] a palpable defect by which the court and the parties have been misled but also show[s] that correcting the defect will result in a different disposition of the case." *Id.* A motion for reconsideration which merely presents "the same issues ruled upon by the court, either expressly or by reasonable implication," shall be denied. *Id.*

## II. FACTUAL BACKGROUND

The following recitation of facts is taken from Judge Gilmore's memorandum opinion and order entered September 16, 1998. *See R.S.S.W.,* 18 F.Supp.2d at 741–43.

Plaintiff R.S.S.W., Inc. owns a "brewpub" known as "Goose Island," located in Keego Harbor, Michigan. When Goose Island opened for business in 1995, it acquired a Class "C" liquor license from the predecessor establishment. It then applied for and was granted its own licenses. On October 30, 1995, the establishment was granted the following licenses: (i) a class "C" liquor license; (ii) a Sunday sales permit; (iii) an "official" (food) permit; (iv)

a dance permit; and (v) an "SDM" license. Approximately seventeen months later, on March 25, 1997, Goose Island was also granted its "brewpub" license. Under state law, all such licenses must be renewed each year as of May 1st. Goose Island's licenses have been renewed each year since 1995 and are currently in full force and effect.

Since its opening, Goose Island has served food and alcohol until 2:00 a.m. Plaintiffs, however, allege that defendants, in an effort to promote Keego Harbor as a family-oriented summer recreational destination, have impermissibly pressured Goose Island to set a closing time of 11:00 p.m. According to plaintiffs, defendants have no authority to require an earlier closing time, and have instead allegedly set out on an unlawful campaign of harassment intended to force Goose Island into submission.

Plaintiffs further allege that the purported campaign of harassment was comprised of four components: (1) "inordinate police scrutiny," allegedly resulting in diminution of business from $91,000 in January 1997 to $31,000 in January 1998; (2) enactment of a city liquor license ordinance listing the criteria upon which the City will recommend non-renewal or revocation of a liquor license to the Michigan Liquor Control Commission (MLCC); (3) abuse of the City zoning authority; and (4) lodging an unjustified complaint with the MLCC regarding a customer incident.

Goose Island closed its doors to business on February 7, 1998, after the original complaint in the instant case was filed on February 4, 1998. Plaintiffs have since placed Goose Island up for sale, claiming that this was necessitated by poor business performance due to defendants' campaign of harassment. Plaintiffs report that they have received no offers to purchase the brewpub and that they "plan to re-open [the brew-pub] on the notion that the pressure has now relented."

## III. ANALYSIS

Plaintiffs make three principal objections to Judge Gilmore's September 16, 1998 memorandum opinion and order. First, plaintiffs argue that the court erred in dismissing individual defendants Behler, Burns, Nance, and Hofmann from the case on the basis of absolute legislative immunity. Second, plaintiffs maintain that the court erred in dismissing plaintiffs' First Amendment claim as to the sign ordinance. Third, and finally, plaintiffs contend that the court erred in dismissing plaintiffs' Fourteenth Amendment equal protection claim and in finding that plaintiffs lacked *jus tertii* standing to bring this claim on behalf of plaintiffs' customers and employees.[1] Each of these three objections will be addressed hereinbelow *seriatim*.

### A. THE COURT DID NOT ERR IN DISMISSING INDIVIDUAL DEFENDANTS BEHLER, BURNS, NANCE, AND HOFMANN ON THE GROUND OF ABSOLUTE LEGISLATIVE IMMUNITY.

In the prior memorandum opinion and order, the court held that certain individual defendants—Behler, Burns, Nance, and Hofmann—were protected under the doctrine of absolute legislative immunity. *See R.S.S.W.*, 18 F.Supp.2d at 748–49. These defendants are members of defendant Keego Harbor's city council. In reaching the conclusion that these defendants are entitled to legislative immunity, the court reasoned as follows:

> each City Council Member is alleged only to have participated in the passage of various ordinances. No allegations are made as to the conduct of any single member. Clearly, the acts Plaintiffs complain of are ultimately legislative acts and each City Council Member is entitled to legislative immunity. Plaintiffs cannot avoid this result by raising vague allegations that those legislative

acts were a mere "formalization" of non-legislative back-room discussions. Such claims, unaccompanied by specific allegations regarding any one person, have been flatly rejected by the Sixth Circuit.

*Id.* at 749 (citing *Veney v. Hogan*, 70 F.3d 917, 922 (6th Cir.1995)). By contrast, the court held that individual defendants Steklac and Beach, unlike the city council members, were *not* entitled to immunity. With respect to these defendants, the court found that plaintiffs had alleged specific facts, which, if true, would constitute "violations of the clearly established right to pursue one's chosen occupation." *Id.* at 750.

■ Plaintiffs maintain that they are now able to show that council members committed acts outside their legislative duties resulting in the imposition of "unconstitutional conditions," and, therefore, these defendants should not be entitled to legislative immunity. Plaintiffs first point to a special city council meeting held April 30, 1997 and attended by defendants Behler, Burns, Nance, and Hofmann. Also in attendance were defendant City Manager Michael Steklac, City Attorney Thomas Ryan, and Gino Santiia, a planning commission member. Plaintiffs argue that "they used the influence of their official positions on matters which would properly be before the Planning Commission and the Zoning Board of Appeals acting in concert to impose an unconstitutional condition on the operation of Plaintiff's business." Plaintiffs' Corrected Motion for Reconsideration, p. 2.

In response, defendants argue that plaintiffs' reliance on the April 30, 1997 special city council meeting does not establish that council members did anything outside of their legislative capacity. This Court agrees. As the minutes to the special meeting demonstrate, the council members debated the propriety of approv-

---

**1.** "Jus tertii" means "the right of a third party." Black's Law Dictionary 864 (6th ed.1990).

ing the Goose Island site plan which "would constitute an expansion of a non-conforming use" of the property in question.[2] *See* Minutes, p. 3, attached as Exh. 1 to Plaintiff's Motion for Reconsideration. The Court finds that at the special meeting council members *were engaged* in the proper legislative activity of considering potential problems in their community which might have had an impact upon community welfare. As such, these defendants remain protected by absolute legislative immunity.

■ Plaintiffs next argue that defendant Hofmann "personally appeared in his individual capacity before the Planning Commission on March 6, 1997, April 14, 1997, and May 1, 1997, specifically advocating against Plaintiff in conformity with the agreed upon plan to harass the business and impose unconstitutional conditions." *See* Plaintiffs' Corrected Motion for Reconsideration, pp. 2–3.[3] Responding to plaintiffs' allegations regarding defendant Hofmann's attendance at the planning commission meetings, defendants argue that plaintiffs have failed to show that such appearances defeat the application of legislative immunity in the case at bar. Defendants further argue that a local legislative official does not give up his rights as a citizen upon taking public office and that an official does not lose the benefit of legislative immunity merely because he also acts in his private capacity as a member of the community.

The Court finds that defendant Hofmann's entitlement to legislative immunity is not defeated by his appearance at the planning commission meetings. As plain-

tiffs themselves point out, Judge Gilmore in ruling upon defendants' motion was well-aware of plaintiffs' allegations regarding Hofmann's attendance at the planning commission meetings. *See* Plaintiffs' Corrected Motion for Reconsideration, p. 3. These allegations "were brought to the attention of the Court in Plaintiff's May 29, 1998, Brief in Opposition to Defendants' Amended Motion to Dismiss at page 3, footnote 5, and Appendix pages 79, 98 and 124." *Id.*

As previously discussed, pursuant to L.R. 7.1(g)(3) a motion for reconsideration may not merely present "the same issues ruled upon by the court, either expressly or by reasonable implication." There is no basis to conclude that the court committed palpable error or that it was misled. Judge Gilmore after due consideration of plaintiffs' claims found that plaintiffs had failed to come forward with any allegations of actions by council members which would not be covered by legislative immunity. *See R.S.S.W.*, 18 F.Supp.2d at 749 (citing *Veney v. Hogan*, 70 F.3d 917, 920 (6th Cir.1995)).

■ In their supplemental brief, plaintiffs further allege that defendant Hofmann "held informal meetings with a handful of persons to discuss their opposition to [plaintiffs'] business, and strategy for inspiring a municipal response." Suppl. Brief, p. 1. Plaintiffs re-allege that defendant Hofmann "told the planning commission on *May 1, 1997* [that] Plaintiffs did not belong in the neighborhood." *Id.* at p. 2. Plaintiffs also point out that defendant Hofmann resides only a few hundred feet from plaintiffs' business.

2. According to defendants, a restaurant is a permitted use in a C–1 zone, the zoning area in which plaintiff's establishment was located. A bar/lounge is considered a "conditional use." According to defendants, since plaintiffs had not applied for a conditional use, expansion of the business as a bar would have been an expansion of a non-conforming use. *See* Defendants' Response to Plaintiffs' Motion for Reconsideration, p. 3, n. 1

3. Plaintiffs also rely upon an unspecified "Plaintiff's Affidavit" in which defendants allegedly "made admissions to Plaintiff and its employees regarding [Hofmann's] harassment by the City." *Id.* at p. 3. However, there is no plaintiff's affidavit attached to the original motion for reconsideration, the corrected motion for reconsideration or to the supplemental brief filed by plaintiffs on April 19, 1999. Accordingly, the Court will not consider these unsupported admissions.

While this Court duly notes the allegations and testimony cited in plaintiffs' supplemental brief, it is important to emphasize that these allegations relate to the possible improper motivations of certain defendants in enacting ordinances as city council members. It is well-settled that in a § 1983 action plaintiffs' allegations concerning *improper motives* of members of municipal legislative body may not be used to defeat those members' claims of absolute legislative immunity. *See Chicago Miracle Temple Church v. Fox*, 901 F.Supp. 1333, 1341 n. 9 (N.D.Ill.1995); *see also Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (stating that "[t]he claim of an unworthy purpose does not destroy the privilege"); *Rateree v. Rockett*, 852 F.2d 946, 951 (7th Cir.1988) (stating that "[a]dmittedly, a particular legislator may vote for legislation for seemingly improper reasons; nevertheless, the rule of absolute immunity shields this conduct"). Accordingly, this Court does not find plaintiffs' additional allegations sufficient to defeat defendants' entitlement to absolute legislative immunity.

As an additional argument, plaintiffs maintain that the court impermissibly imposed a "heightened pleading requirement" on plaintiffs with respect to their allegations against individual city council member defendants. *See* Plaintiffs' Corrected Motion for Reconsideration, p. 6 (citing *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)). In *Veney*, the Sixth Circuit addressed the pleading requirement in cases involving qualified immunity:

> when a plaintiff pleads his claim in generalized "notice" form, and the defense of qualified immunity is asserted through a motion to dismiss, the plaintiff is required to respond to that defense. *If his original complaint is deficient in that regard, he must amend his complaint to include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity*. For example, if the original complaint alleged that a police officer "used excessive force," and qualified immunity is asserted, then plaintiff would be required to amend with allegations of evidence sufficient to demonstrate that the force used against him was, indeed, unreasonable. *It is in this sense that a heightened standard attaches to plaintiff's pleading*.

70 F.3d at 922 (emphasis added). Contrary to plaintiffs' suggestion, the Sixth Circuit's holding in *Veney* has not been overturned by the Supreme Court's ruling in *Crawford–El*. In *Crawford–El*, the Court rejected applying a "clear and convincing" standard with respect to plaintiff's affirmative case in a qualified immunity case. *Veney*, as quoted above, does not require "clear and convincing" evidence, but instead requires "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Id.* In the case at bar, although plaintiffs have put forth some allegations of fact regarding individual defendants, none of these allegations, even if true, are sufficient to defeat defendants' claims of legislative immunity.

## B. THE COURT DID NOT ERR IN DISMISSING PLAINTIFFS' FIRST AMENDMENT CHALLENGE TO THE SIGN ORDINANCE.

Judge Gilmore, in the prior memorandum opinion and order, held that there was no case or controversy relating to plaintiffs' facial challenge to the sign ordinance. Plaintiffs' request to replace the sign-face was *not denied* but merely *postponed*, and therefore the court held that plaintiffs lacked standing to challenge the sign ordinance. The court reasoned as follows:

> Plaintiffs raise a facial challenge to the City sign ordinance ("Sign Ordinance") under the First Amendment. Unlike the challenge to the Liquor Ordinance, the challenge to the Sign Ordinance is

not properly a part of this case. While the City has allegedly threatened to apply the Liquor Ordinance to Plaintiffs' detriment, the same is not true of the Sign Ordinance. *Plaintiffs' request to replace its sign-face was not denied, or threatened to be denied, but postponed pending resolution of the zoning disputes.* Furthermore, Plaintiffs do not challenge the legal right of the City to postpone its decision in this manner. Rather, they allege that the postponement was not put into effect for the reasons proffered but to advance the campaign of harassment. Thus, while these allegations are fully relevant to Plaintiffs' Fourteenth Amendment due process claim, there is simply no case or controversy at hand that gives this Court jurisdiction to undertake a facial review of the Sign Ordinance under the First Amendment. *Miyazawa v. City of Cincinnati,* 45 F.3d 126, 127 (6th Cir. 1995).

*R.S.S.W.,* 18 F.Supp.2d at 748 (emphasis added) (footnote omitted). The court accordingly dismissed plaintiffs' challenge to the sign ordinance on the basis of a lack of jurisdiction. *See Miyazawa,* 45 F.3d at 127 (stating that "Article III of the United States Constitution provides that parties attempting to invoke federal jurisdiction must allege an actual case or controversy").

Plaintiffs argue that the City had "no standards" upon which to base a decision under the sign ordinance. Plaintiffs' Corrected Motion for Reconsideration, p. 5. According to plaintiffs, the court improperly found that plaintiffs "did not challenge the legal right of the City to postpone its decision in the matter." *Id.* "The postponement caused actual and continuing harm to Plaintiffs inasmuch as they were attempting to settle a trademark case pending before this Court ... and had to change the sign in order to do so." *Id.* Plaintiffs further maintain that the change in the content of the sign was unrelated to the ongoing zoning disputes, thereby mani-

festing unbridled discretion and lack of standards on the part of defendants. *Id.* (citing *G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,* 23 F.3d 1071 (6th Cir.1994)).

Defendants, in response, maintain that plaintiffs are merely re-arguing the same issues already ruled upon by the court. First, according to defendants, plaintiffs' argument regarding lack of standards misses the point of the court's ruling. As quoted above, the court's ruling was premised on the threshold determination that plaintiffs had failed to assert a case or controversy to trigger the court's jurisdiction. While plaintiffs argue that their standing is supported by the Sixth Circuit's decision in *G & V Lounge,* their reliance on that case, according to defendants, is misplaced.

In *G & V Lounge,* plaintiff-liquor licensee alleged that defendant-city had violated plaintiff's First Amendment rights when the city threatened to seek revocation of plaintiff's liquor license and entertainment permit if plaintiff presented topless dancing at the bar. *See* 23 F.3d at 1073. The Sixth Circuit reversed the district court's determination that plaintiff had not presented any Article III case or controversy. The appellate court held that

the threat to take away Plaintiff's license or permit has already chilled Plaintiff from presenting a First Amendment protected activity to the public. This is also a distinct and palpable injury in fact, and is actual rather than merely imminent. It is well-settled that a chilling effect on one's constitutional rights constitutes a present injury in fact.

*Id.* at 1076.

This Court finds that plaintiffs' citation of *G & V Lounge* does not demonstrate that the court's ruling was erroneous. *G & V Lounge* is factually distinguishable from the instant action. As discussed above, *G & V Lounge* involved a threat to revoke a liquor license if the licensee permitted topless dancing. In the case at

hand, there was no threat to revoke or to deny some right to which plaintiffs were entitled. Plaintiffs were *not denied* permission to change the sign. Rather, there was merely a determination to *postpone* decision on the sign permit pending resolution of the other zoning and building issues surrounding plaintiffs' property. As such, plaintiffs reliance on *G & V Lounge* is misguided.

As defendants point out, a sign ordinance is a commonplace of zoning and the ordinance in question does not discriminate on the basis of content. Plaintiffs' facial attack on the validity of the ordinance is therefore lacking in merit. The court correctly concluded that a facial challenge to the ordinance was not properly a part of the instant action, but instead more appropriately construed as an aspect of plaintiffs' Fourteenth Amendment due process claim. Plaintiffs have merely presented the same issues previously ruled upon by the court, either expressly or by reasonable implication. *See* L.R. 7.1(g)(3).

## C. THE COURT DID NOT ERR IN DISMISSING PLAINTIFFS' FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM AND IN FINDING THAT PLAINTIFFS LACKED *JUS TERTII* STANDING TO BRING THIS CLAIM ON BEHALF OF PLAINTIFFS' CUSTOMERS AND EMPLOYEES.

Lastly, plaintiffs maintain that the court erred in dismissing their equal protection claim. With respect to selective enforcement of the zoning laws, the court held that "[p]laintiffs [had] not properly stated an equal protection claim" because they had not alleged that they were selectively treated "as compared with others similarly situated." *See R.S.S.W.*, 18 F.Supp.2d at 747. Likewise, the court held that plaintiffs had failed to state an equal protection claim for selective enforcement of the traffic laws. *Id.* Furthermore, plaintiffs were found to have lacked standing to assert

this claim, "as the alleged scrutiny was brought to bear not upon them, but upon their customers and employees." *Id.* The court stated that "[p]laintiffs lack[ed] *jus tertii* standing to bring this claim on behalf of those parties, absent a showing that those parties are hindered in their ability to protect their own interests." *Id.* (citing *Connection Distributing Co. v. Reno*, 154 F.3d 281, 295 (6th Cir.1998)).

■ Plaintiffs' challenge focuses on the third-party standing issue. Defendants contend that individuals affected by the alleged selective enforcement (i.e. employees and customers) "would have 'some hindrance' in their ability to protect their own liberty and freedom of association." *See* Plaintiffs' Corrected Motion for Reconsideration, p. 6. According to defendants,

(a) The individual employees and patrons would have no reason or ability to maintain the records of the pattern of enforcement.

(b) The persons involved in any individual incident might not understand it to be part of such a pattern.

(c) Their financial interest in vindicating their rights is minimal compared to the expense of vindicating said rights.

*Id.*

In response, defendants point out that plaintiffs do not challenge the court's reasoning in dismissing the claim of selective enforcement of the zoning laws. The court found that plaintiffs' allegations regarding the merits of their zoning variance application more appropriately stated a due process claim rather than an equal protection claim. *See R.S.S.W.*, 18 F.Supp.2d at 747. Instead of contesting this reasoning, plaintiffs argue that the court committed palpable error in not recognizing *jus tertii* standing for plaintiffs to bring a claim of selective enforcement of the traffic laws on behalf of their patrons and employees. According to defendants, the court "correctly reasoned that the alleged 'police scrutiny' was not brought to bear on Plain-

tiffs." Defendants' Response to Plaintiffs' Motion for Reconsideration, p. 12.

In *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Supreme Court set forth three criteria which must first be satisfied before a party may bring an equal protection claim based upon injury to some third-party. First, "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute." *Id.* at 411, 111 S.Ct. 1364. Second, "the litigant must have a close relation to the third party." *Id.* Third, "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id.* This three-part test was recently applied by the Sixth Circuit in *U.S. v. Ovalle,* 136 F.3d 1092 (6th Cir.1998).

Plaintiffs assert that they have suffered such an "injury in fact" through the diminution of their business by more than 75 percent over less than one year's time. Second, plaintiffs argue that they had a "close relationship" with their employees "whom they wished to retain, protect and develop." Third, as discussed above, plaintiffs maintain that the employees and patrons faced "some hindrance" in protecting their own liberty and freedom of association.

The Court finds that Judge Gilmore did not err in finding that plaintiffs lacked *jus tertii* standing to bring an equal protection claim on behalf of their employees and patrons. Although plaintiffs cite two cases in support of such standing—*Powers, supra,* and *Ovalle, supra,*—both of these cases concern third-party standing in the context of criminal defendants and prospective jurors excluded on the basis of race. These cases do not directly address the issue implicated in the instant case, whether *jus tertii* standing exists between an employer and its employees or customers. Moreover, at least one district court has noted that "the relationship between ... employer and its nonunion employees is not the type of relationship generally considered close enough to the protected action to support *jus tertii* standing." *Hoke Co., Inc. v. Tennessee Valley Authority,* 661 F.Supp. 740, 750 (W.D.Ky.1987) (citing *Birth Control Centers, Inc. v. Reizen,* 743 F.2d 352, 358 (6th Cir.1984) (physician/abortion patient)).

Taking as true plaintiffs' allegation that it has suffered an "injury in fact" through diminution of business, plaintiffs still have failed to satisfy the two other criteria required for *jus tertii* standing. This Court is in agreement with the district court in *Hoke* that the employer-employee relationship is not generally sufficiently close to trigger such standing. *See Hoke,* 661 F.Supp. at 750. With regard to plaintiffs' patrons, the Court concurs with Judge Gilmore that plaintiffs have failed to meet the third prong of the *jus tertii* test. Plaintiffs have *not* shown that customers are truly hindered from protecting their own interests. Courts have required either that the allegedly injured third-party be subject to "some genuine obstacle" to asserting his or her own rights or that such assertion be "in all practical terms impossible." *Singleton v. Wulff,* 428 U.S. 106, 116, 126, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). In the case at bar, although plaintiffs have asserted some possible reasons which might impede patrons' bringing an equal protection claim, these reasons do not amount to "genuine obstacles" nor do they make a suit brought by patrons "in all practical terms impossible."

In summary, plaintiffs have not "demonstrate[d] a palpable defect by which the court and the parties have been misled." L.R. 7.1(g)(3). Nor have plaintiffs shown that "a different disposition of the case must result from a correction thereof." *Id.* Plaintiff have merely presented "the same issues ruled upon by the court, either expressly or by reasonable implication." *Id.* Accordingly, plaintiffs' motion for reconsideration of Judge Gilmore's September 16, 1998 memorandum opinion and order granting in part and denying in part

defendants' motion to dismiss will be denied.

**ORDER**

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiffs' corrected motion for reconsideration filed October 6, 1998 is DENIED.

SO ORDERED.